2012 CO 61

MELAT, PRESSMAN & HIGBIE, L.L.P., f/k/a Melat, Pressman, Ezell & Higbie L.L.P., and Howarth & Smith, Petitioners

v.

HANNON LAW FIRM, L.L.C., f/k/a The Law Firm of Kevin S. Hannon, L.L.C., f/k/a The Law Firm of Kevin S. Hannon, Respondent.

No. 11SC265.

Supreme Court of Colorado, En Banc.

Oct. 22, 2012.

Cross & Bennett, L.L.C., Joseph F. Bennett, Keith F. Cross, Colorado Springs, Colorado, Attorneys for Petitioners.

Burns, Figa & Will, P.C., Alexander "Alec" R. Rothrock, David M. "Merc" Pittinos, Greenwood Village, Colorado, Attorneys for Respondent.

Justice HOBBS delivered the Opinion of the Court.

¶ 1 We granted certiorari in *Hannon Law Firm, L.L.C. v. Melat, Pressman & Higbie, L.L.P.,* —— P.3d ——, 2011 WL 724742 (Colo. App.2011) (selected for official publication), to determine whether a withdrawing attorney who is barred from maintaining an action for recovery in quantum meruit from the client may nevertheless maintain an action in quantum meruit against former co-counsel, and, if so, when the withdrawing attorney's quantum meruit claim accrues.[1]

¶ 2 In the 1990s, The Hannon Law Firm ("Hannon"), Melat, Pressman & Higbie, L.L.P. ("Melat"), and Howarth & Smith ("Howarth") entered into a contingent fee agreement to represent multiple plaintiffs in an action against the Cotter Corporation ("Cotter") regarding contamination from a uranium mill. The three firms entered into a fee sharing agreement to apportion the fees and costs of the litigation among themselves. Hannon withdrew mid-representation, citing a strained relationship with Howarth. Six years later, after the underlying litigation settled, Hannon filed this quantum meruit action against Melat and Howarth, seeking the reasonable value of the services it provided up to the time of withdrawal.

¶ 3 Melat and Howarth first filed a motion to dismiss under C.R.C.P. 12(b)(5) for failure to state a claim upon which relief can be granted. They argued that C.R.C.P. Chapter 23.3 of the Rules Governing Contingent Fees prevents such a recovery when the contingent fee agreement fails to contain a provision for quantum meruit recovery when the client terminates the fee agreement. The fee agreement in this case contained no such provision. The trial court denied the motion to dismiss, stating that "[a]t issue in this case is the fee-sharing agreement" between law firms, "not the attorney-client fee agreement." The trial court observed that, for purposes of ruling on the motion to dismiss, it must accept the following as true: (1) Hannon worked an uncompensated 541.4 attorney hours, (2) Hannon expended 1881.9 paralegal hours on the Cotter case, (3) Hannon worked on the Cotter case for the beginning six years of the case, and (4) though the case settled six years after Hannon withdrew, the remaining law firms received a large benefit from the case in the form of a settlement without providing Hannon any compensation for the value of its services during the first half of the case's duration. "Under these facts," said the trial court, "Hannon could establish a claim for quantum meruit by demonstrating that 1) a benefit was conferred by one of the parties on the other, 2) the benefit was appreciated by the receiving party, and 3) the benefit was accepted under circumstances where it would be inequitable for the benefit to be retained without payment of its value." The trial court said a jury trial would be required because, "[o]bviously, the amount of the damages is still to be determined."

¶ 4 Upon the trial court's dismissal of their motion, Melat and Howarth answered the complaint and subsequently filed a "Motion for Judgment on the Pleadings Based on the Statute of Limitations." In this motion, they stated that "the statute of limitations for claims based on quantum meruit" requires that the action "must be filed within three years of the date the cause of action accrued." The parties have litigated and argued this case in the trial court, the court of

---

1. The issues on which we granted certiorari were as follows:
   1. Whether the court of appeals erred in holding that, when a withdrawing attorney is barred from recovering quantum meruit from the client, the attorney may nevertheless recover quantum meruit from former co-counsel.

2. Whether the court of appeals erred in holding that when an attorney withdraws from a contingency fee case, the attorney's quantum meruit claim does not accrue until there is a recovery in the underlying lawsuit.

appeals, and before us based on a three-year statute of limitations period being applicable to Hannon's quantum meruit claim. The certiorari issues Melat and Howarth bring to us do not include an issue regarding the length of the statute of limitations period. Because such an issue was not preserved in the trial court or in the court of appeals, and those courts had no opportunity to consider and rule on such an issue, we express no opinion on it. As to determination of the accrual date that triggers running of the statute of limitations period, Melat and Howarth contended that "an attorney's claim for quantum meruit recovery of fees accrues immediately upon the termination of the representation." Treating the motion for judgment on the pleadings as a motion for summary judgment, the trial court agreed with Melat and Howarth that the quantum meruit claim accrued at the time Hannon withdrew from representation and not when there was a recovery by settlement in the lawsuit.

¶ 5 The court of appeals upheld the trial court's judgment with regard to its interpretation of C.R.C.P. Chapter 23.3 allowing a quantum meruit claim among co-counsel, but reversed the trial court's determination that the claim accrued when Hannon withdrew from the litigation, instead of when the recovery occurred that made funds available to the attorneys.

¶ 6 We agree with the court of appeals and affirm its judgment. We hold that where multiple attorneys are co-counsel in a contingent fee agreement, C.R.C.P. Chapter 23.3 does not bar a withdrawing attorney from pursuing a quantum meruit action against former co-counsel for a share of attorney fees obtained in the case, even though that attorney is barred from pursuing such an action against the former client. The claim accrues at the time the withdrawing attorney knows or should know of the occurrence of the settlement or judgment that will result in the payment of attorney fees.

## I.

¶ 7 We take the following facts from Hannon's complaint, which we must accept as true for the purposes of the issues raised in this appeal. *See Abts v. Bd. of Edu.*, 622 P.2d 518, 521 (Colo.1980). In 1991, Melat filed a complaint on behalf of multiple plaintiffs who claimed to have been injured by the Cotter Corporation due to Cotter's operation of a uranium mill near Cañon City. Hannon entered its appearance and began representing the plaintiffs in 1993. In 1994, a third law firm, Williams & Trine, P.C. ("Williams"), also entered its appearance on behalf of the plaintiffs. In 1995, the three firms entered into a contingent fee agreement with the plaintiffs. Under the terms of the agreement, Melat, Hannon, and Williams would receive one third of the gross amount of any settlement or judgment. The plaintiffs would receive two thirds, less costs incurred or advanced in the litigation.

¶ 8 In 1996, Melat, Hannon, and Williams entered into a fee sharing agreement with Howarth. Under the agreement, the fees were apportioned twenty percent each to Melat, Hannon, and Williams, and forty percent to Howarth. The fee sharing agreement was silent regarding the recovery of fees in the event one or more firms withdrew as counsel for the plaintiffs.

¶ 9 In 1998, Hannon withdrew from representation with leave of the trial court, citing disagreement with Howarth regarding Howarth's demands on Hannon and lack of communication regarding Hannon's role at trial.[2] Hannon filed notice of an attorney lien, asserting that it was entitled to $160,231.35 for costs expended, as well as reasonable compensation for 541.1 attorney hours and 1881.9 paralegal hours worked on the Cotter case during the period of its representation.[3]

¶ 10 The Cotter litigation settled in 2004, triggering the contingency and payment of attorney fees, six years after Hannon's withdrawal. After settlement, Melat paid Hannon $160,231.35 for Hannon's costs, but both

---

**2.** Whether Hannon justifiably withdrew from representation affects the merits of its quantum meruit claim but does not affect our analysis here. *See Dudding v. Norton Frickey & Assocs.,* 11 P.3d 441, 446 (Colo.2000).

**3.** Williams also withdrew from representation prior to trial.

Melat and Howarth refused to share attorney fees with Hannon.

¶ 11 Hannon filed suit in this case on September 26, 2007, seeking to recover from Melat and Howarth the reasonable value of its services under a theory of quantum meruit. Melat and Howarth moved to dismiss the complaint for failure to state a claim under C.R.C.P. 12(b)(5), arguing that an attorney may only recover quantum meruit under a contingent fee agreement if the agreement gave the client notice of that possibility. The trial court denied the motion, reasoning that the rules governing contingent fee agreements did not necessarily apply to bar an attorney from recovering from former co-counsel.

¶ 12 Melat and Howarth then moved for judgment on the pleadings, arguing that Hannon's claim accrued when it withdrew from representation in 1998. Treating the motion as a motion for summary judgment, the district court granted the motion and dismissed the case, premised on the claim accruing at the time Hannon withdrew from representation and not when a recovery occurred through settlement of the lawsuit.[4]

¶ 13 The court of appeals affirmed the district court's order denying the motion to dismiss for failure to state a claim, but reversed the order dismissing the case. The court held that although Hannon was barred from pursuing a quantum meruit action against the client, it could pursue such an action against former co-counsel because the claim did not require the client to pay any money other than that amount contemplated in the contingent fee agreement. In reversing the order dismissing the case, it held that Hannon's claim accrued upon recovery by the plaintiffs through settlement of the Cotter

action rather than at the time of withdrawal. The court of appeals reasoned that the claim accrued not at the time Hannon conferred the benefit of its services, but at the time retention of that benefit by co-counsel to the exclusion of Hannon became unjust.[5]

¶ 14 We granted certiorari to review the court of appeals' holdings that (1) Hannon could bring a quantum meruit action against former co-counsel, and (2) the claim accrued upon the occurrence of the favorable settlement in the underlying action rather than at the time Hannon withdrew from representation. We affirm the judgment of the court of appeals.

## II.

¶ 15 We hold that where multiple attorneys are co-counsel in a contingent fee agreement, C.R.C.P. Chapter 23.3 does not bar a withdrawing attorney from pursuing a quantum meruit action against former co-counsel for a share of attorney fees obtained in the case, even though that attorney is barred from pursuing such an action against the former client. The claim accrues at the time the withdrawing attorney knows or should know of the occurrence of the settlement or judgment that will result in the payment of attorney fees.

### A.

### Standard of Review

■ ¶ 16 We review de novo an order granting or denying a motion to dismiss for failure to state a claim under C.R.C.P. 12(b)(5). *Bly v. Story*, 241 P.3d 529, 533 (Colo.2010). During our review, we accept all allegations in the complaint as true and

---

4. The district court treated Melat and Howarth's motion for judgment on the pleadings as one for summary judgment because "resolution of the issue presented require[d][the] Court to consider [the fee sharing agreement]." The court of appeals held that this conclusion was unnecessary because the fee sharing agreement was both referred to in, and attached to, Melat's complaint. *See Yadon v. Lowry*, 126 P.3d 332, 335–36 (Colo. App.2005) (holding that a document referred to in a complaint, even though not formally attached, was not a matter "outside the pleadings" for purposes of a C.R.C.P. 12(b)(5) motion to dismiss (citing 11 James Wm. Moore et al.,

Moore's Federal Practice § 56.30[4], at 56–225 & –226 (3d ed.2005))). The court of appeals reviewed the motion as one for judgment on the pleadings. Because the court of appeals' holding on this issue is not in dispute before this court, we likewise review this motion as one for judgment on the pleadings.

5. Judge Terry dissented from the majority's holding on this issue, finding that Hannon's claim accrued no later than the date of Hannon's withdrawal from the federal court litigation.

view them in the light most favorable to the plaintiff. *Id.* The trial court properly grants a C.R.C.P. 12(b)(5) motion only where the plaintiff's factual allegations cannot, as a matter of law, support a claim for relief. *Id.*

¶ 17 We also review de novo a judgment on the pleadings. *See Conn. Gen. Life Ins. Co. v. A.A.A. Waterproofing, Inc.,* 911 P.2d 684, 687 (Colo.App.1995), *aff'd sub nom, Constitution Assocs. v. NH Ins. Co.,* 930 P.2d 556 (Colo.1996). In considering such a motion, a court "must construe the allegations of the pleadings strictly against the movant, must consider the allegations of the opposing parties' pleadings as true, and should not grant the motion unless the pleadings themselves show that the matter can be determined on the pleadings." *Id.*

¶ 18 A basic principle of appellate jurisprudence is that arguments not advanced in the trial court and on appeal are generally deemed waived. *Moody v. People,* 159 P.3d 611, 614 (Colo.2007). It is axiomatic that issues not raised in or decided by a lower court will not be addressed for the first time on appeal. *People v. Salazar,* 964 P.2d 502, 507 (Colo.1998). Our judicial system depends upon the orderly presentation and preservation of issues. *Colo. Permanente Med. Group, P.C. v. Evans,* 926 P.2d 1218, 1228–29 (Colo.1996). *See also City & Cnty. of Denver v. Qwest Corp.,* 18 P.3d 748, 760 (Colo.2001).

### B.

### Applicable Law

¶ 19 Quantum meruit is an equitable theory of recovery that arises out of the need to avoid unjust enrichment to a party in the absence of an actual agreement to pay for services rendered. *Dudding v. Norton Frickey & Assocs.,* 11 P.3d 441, 444–45 (Colo. 2000). Quantum meruit allows a party to recover the reasonable value of the services provided when the parties either have no express contract or have abrogated it. *Id.* To recover in quantum meruit, a plaintiff must demonstrate that (1) at plaintiff's expense, (2) defendant received a benefit, (3) under circumstances that would make it unjust for the defendant to retain the benefit

without paying. *Id.* at 445. Whether retention of the benefit is unjust is a fact-intensive inquiry in which courts look to, among other things, the intentions, expectations, and behavior of the parties. *Lewis v. Lewis,* 189 P.3d 1134, 1140, 1143 (Colo.2008) (discussing the inquiry in the context of an unjust enrichment claim).

¶ 20 In the context of the attorney-client relationship, an attorney who withdraws before the close of a case may generally recover the reasonable value of his or her services under a quantum meruit theory. *Mullens v. Hansel–Henderson,* 65 P.3d 992, 999 (Colo.2002). However, C.R.C.P. Chapter 23.3, which governs contingent fee arrangements, may limit such recovery in certain situations because of notice due to clients regarding the fees for which they are liable. *See Elliott v. Joyce,* 889 P.2d 43, 46 (Colo. 1994). In particular, Chapter 23.3 requires that contingent fee agreements contain "a statement of the contingency upon which the client is to be liable to pay compensation otherwise than from amounts collected for him by the attorney." C.R.C.P. Ch. 23.3, Rule 5(d). We have interpreted Chapter 23.3 to limit a withdrawing attorney's ability to recover quantum meruit from a client to those circumstances in which the underlying agreement adequately informs the client of that possibility. *See Dudding,* 11 P.3d at 446–47; *Elliott,* 889 P.2d at 46.

¶ 21 The point at which a withdrawing attorney's quantum meruit claim accrues in a contingent fee case that results in a settlement or judgment making funds available for attorney fees to co-counsel is a matter of first impression before us. In general, a claim accrues when a suit can be maintained. *See Jones v. Cox,* 828 P.2d 218, 224 (Colo.1992) (A claim accrues "when a suit may be maintained thereon."); *Black's Law Dictionary* 23 (9th ed. 2009) (defining "accrue" as "to come into existence as an enforceable claim or right"). A quantum meruit claim accrues when a person discovers, or through the exercise of reasonable diligence should discover, that all the elements of the claim are present. *See Miller v. Armstrong World Indus., Inc.,* 817 P.2d 111, 113 (Colo. 1991) (A claim for relief accrues when plain-

tiff knows, or should know, all material facts essential to show the elements of that cause of action.). *See, e.g.,* §§ 13–80–108(4), (6) & (8), C.R.S. (2012).

¶ 22 Courts from other jurisdictions are split regarding when a quantum meruit claim accrues within the context of an attorney-client dispute involving a contingent fee agreement. Under the California rule, the claim accrues upon occurrence of the contingency resulting in attorney fees. *See Fracasse v. Brent,* 6 Cal.3d 784, 100 Cal.Rptr. 385, 494 P.2d 9 (1972). Two main rationales support the California Supreme Court's conclusion in *Fracasse.* First, a significant factor in determining the reasonableness of an attorney's fee is the "amount involved and the results obtained." *Id.* at 792, 100 Cal. Rptr. 385, 494 P.2d 9. Until the contingency occurs, it is impossible to determine the results obtained, and determining the amount involved is highly speculative. *Id.* Second, the court reasoned that it is unfair to burden the client with an obligation to pay his or her former attorney regardless of the outcome of the litigation. *Id.*

¶ 23 By contrast, under the New York rule, accrual occurs immediately upon withdrawal or discharge of the attorney. *See Tillman v. Komar,* 259 N.Y. 133, 181 N.E. 75 (1932). The New York Court of Appeals reasoned that, because quantum meruit is a remedy that exists in the absence of a contract, the value of an attorney's services should not depend on a term from a contract that has been abrogated by the termination of the attorney-client relationship. *Id.* at 76; *accord In re Estate of Callahan,* 144 Ill.2d 32, 40–41, 161 Ill.Dec. 339, 578 N.E.2d 985 (1991) ("The claimant's recovery here should not be linked to a contract contingency when his recovery is not based upon the contract, but upon quantum meruit.").

## C.

### Application to this Case

1. **A withdrawing attorney who is barred from recovering quantum meruit from the client may nevertheless maintain a quantum meruit action against former co-counsel.**

¶ 24 Melat and Howarth first argue that a withdrawing attorney who is barred from recovering in quantum meruit from his or her former client is also barred from recovery from former co-counsel. Melat and Howarth assert that adopting a contrary rule would undermine the purpose of C.R.C.P. Chapter 23.3, Rule 5, which requires client notification of the circumstances under which counsel will be entitled to compensation. In response, Hannon argues that neither our rules governing contingent fee agreements, nor the cases interpreting them, bar a withdrawing attorney from maintaining a quantum meruit action against former co-counsel because the rules do not govern fee-sharing relationships between attorneys.

¶ 25 We agree with Hannon and hold that C.R.C.P. Chapter 23.3 does not bar a withdrawing attorney from maintaining a quantum meruit action against former co-counsel even if it would bar the attorney from recovering from the client. Chapter 23.3 does not purport to impose restrictions on fee sharing agreements or equitable recovery between attorneys. Rather, its purpose is to ensure that the client is fully advised of the financial obligations he or she assumes by entering into a contingent fee agreement. *Dudding,* 11 P.3d at 446 (citing with approval *Joyce v. Elliott,* 857 P.2d 549, 552 (Colo.App.1993), *aff'd,* 889 P.2d 43 (Colo. 1994)).

¶ 26 In this case, the attorneys collectively entered into a contingent fee agreement with their clients under which the attorneys received one third of the amount of settlement or judgment and the clients received two thirds minus costs expended and advanced. To the extent that the agreement failed to notify the clients of the possibility of quantum meruit recovery, Hannon may not recover from them. *See Dudding,* 11 P.3d at 446; *Elliott,* 889 P.2d at 46. In contrast, while Hannon's claim against Melat and Howarth for quantum meruit recovery would require them to share their portion of the proceeds of the settlement, it does not require the clients to pay any more or less than the amount contemplated in the underlying agreement. Thus, recovery from co-counsel

would not offend the rationale behind Chapter 23.3, which is to protect clients. Chapter 23.3 does not act as a general bar against a quantum meruit action between attorneys. We perceive no reason why Chapter 23.3 and cases interpreting it should prevent Hannon from seeking to recover fees from former co-counsel.

¶ 27 We therefore agree with the court of appeals and conclude that the trial court did not err in denying Melat and Howarth's motion to dismiss for failure to state a claim.

2. **In the context of a contingent fee arrangement, a withdrawing attorney's quantum meruit claim against former co-counsel accrues when the attorney knows or should know of the occurrence of the favorable settlement or judgment that will result in attorney fees.**

¶ 28 Melat and Howarth next argue that the statute of limitations on Hannon's claim for quantum meruit began to run at the time Hannon withdrew from representation; they argued in the trial court, in the court of appeals, and before us that the applicable statute of limitations period is three years.[6] In response, Hannon asserts that the claim only accrued when the underlying litigation settled, resulting in a recovery.

¶ 29 Based on Hannon's complaint, we assume as true for the purposes of a judgment on the pleadings that, at the time Hannon withdrew, Melat and Howarth had received the benefit of Hannon's services at Hannon's expense. Such evidence goes towards two of the three elements of a quantum meruit claim. As to the third element, Hannon contends that retention of the benefit only became unjust when the underlying plaintiffs, through the combined efforts of co-counsel, obtained a settlement in their case.

¶ 30 We acknowledge that quantum meruit is an equitable theory of recovery that exists independent of any contract. Therefore, the contingency itself—a term of an agreement Hannon could not enforce against the client when he withdrew from representation— should not control a quantum meruit claim between co-counsel. In the absence of any express agreement or contract, a court looks to the intentions, expectations, and behavior of the parties to determine when recovery has become unjust. *Lewis,* 189 P.3d at 1140, 1143. In any contingent fee arrangement, no party expects to recover fees or costs unless and until the case settles or the client receives a favorable judgment. A claim for quantum meruit should accrue when that expectation has been frustrated. Under the facts alleged here, a favorable settlement was achieved, but Melat and Howarth refused to share with Hannon the proceeds of the settlement payable to attorneys. The alleged facts of the parties' behavior include that Melat, consistent with an accrual date based upon obtaining a recovery, readily paid Hannon its share of the costs while denying Hannon any share in the recovery of funds available for attorney fees. As the California Supreme Court pointed out in *Fracasse,* in a contingent fee arrangement, it is difficult to determine the reasonable value of an attorney's services before the outcome of the case. 6 Cal.3d at 792, 100 Cal.Rptr. 385, 494 P.2d 9. Under our own rules of professional conduct, a major factor in determining the reasonableness of an attorney's fee is "the amount involved and the results obtained." Colo. RPC 1.5(a)(4). Given that quantum meruit is a form of equitable relief, it is not justifiable to award a withdrawing attorney a fee prior to settlement or judgment because the value

---

**6.** Melat and Howarth argue in their opening brief before us that "Hannon's claim is barred by the three year statute of limitations." They do not argue that any lesser period than three years applies in this case. In making their accrual argument, they refer to section 13–80–108(6), C.R.S. This is the provision of the rule that pertains to any express or implied contract. They do not invoke section 13–80–108(8), C.R.S., which refers to a cause of action for losses or damages not otherwise enumerated. In any event, subsections (6) and (8) both provide, respectively, that a cause of action accrues when the breach or the injury, loss, or damage is discovered or should have been discovered by the exercise of reasonable diligence. We can therefore decide the matter of accrual in this case without injecting *sua sponte* the issue of the relevant statute of limitations period. Melat and Howarth have not preserved any issue they might have had regarding the length of the applicable statute of limitations period for purposes of this appeal. *Moody v. People,* 159 P.3d 611, 614 (Colo. 2007).

of the attorney's services is too speculative at that point.

¶ 31 If an attorney were allowed to withdraw from a case and immediately claim quantum meruit from former co-counsel, the remaining attorneys would find themselves in the grossly unfair position of having to pay the withdrawing attorney for the value of his or her services even though they themselves might never recoup the value of their own work. Moreover, such an outcome would give co-counsel no incentive to work through their differences for the good of the client. If an attorney knows she or he can file a quantum meruit claim at the moment of withdrawal, the attorney has no reason to compromise with co-counsel and could threaten to withdraw and file for quantum meruit in order to coerce co-counsel into adopting a particular trial strategy or method of fee sharing. We see no sound policy behind allowing such an outcome.

¶ 32 We therefore conclude that a withdrawing attorney's quantum meruit claim against co-counsel in a fee sharing agreement such as the one before us accrues when the attorney learns or through due diligence should learn of the occurrence of the favorable settlement or judgment that will result in payment of attorney fees. Thus, we agree with the court of appeals and determine that the trial court erred in ruling that Hannon's claim accrued when it withdrew from representation.

### III.

¶ 33 Accordingly, we affirm the judgment of the court of appeals.

Justice COATS dissents.

Justice COATS, dissenting.

¶ 34 Although I would also find that the rules governing client contingent fee agreements do not, in and of themselves, similarly govern the fee sharing agreement at issue here, and that Hannon's quantum meruit claim accrued only upon the declination of Melat and Howarth to share attorney fees recovered from their clients, I do not believe the majority opinion provides adequate justification for either of these related proposi-

tions. More particularly, I believe the majority's unwillingness to come to grips with the true nature of quantum meruit and specify the limitations period applicable to such claims preclude it from even identifying the applicable statutory accrual provision, much less applying that provision to the circumstances of Hannon's claim. Finally, because I not only consider unduly facile and unconvincing the majority's explanation for failing to do so, but also believe that a proper application of the statutory scheme leads inexorably to the conclusion that Hannon's claim (notwithstanding its accrual only upon recovery of a contingent fee) was already barred by the time it was filed, I disagree with both the majority's rationale and its ultimate conclusion. I therefore respectfully dissent.

¶ 35 There can be no doubt that the limitations periods governing all personal civil actions in this jurisdiction are mandated by statute. To determine whether any particular action is barred as untimely, it is necessary to know both when the action accrues and the time period within which it may be initiated after accrual. *See BP Am. Prod. Co. v. Patterson*, 185 P.3d 811 (Colo.2008). The legislature has provided a lengthy list of civil actions with specific limitations periods and corresponding points of accrual, §§ 13–80–101—108, C.R.S. (2012), including a catchall provision for "[a]ll other actions of every kind for which no other period of limitations is provided." § 13–80–102(1)(i). Precisely when a particular cause of action accrues and whether it has been initiated within the applicable statutory limitations period are therefore, first and foremost, matters of statutory construction.

¶ 36 Noticeably missing from the majority rationale is any reliance on the controlling statutory scheme in general or any specific statutory limitations period and corresponding point of accrual in particular. Instead, the majority looks to general propositions concerning typical meanings of the term "accrue," gleaned from such sources as Black's Law Dictionary, foreign case law addressing a different problem altogether, and prior pronouncements of our own, in the context of specific tort provisions of the statutory

scheme. Because the accrual dates prescribed by the legislature are structured to correspond precisely with limitations periods dictated for each specific cause of action, *cf. BP American,* 185 P.3d at 814 (demonstrating direct correspondence between accrual provision and limitations period designated for liquidated debt, as distinguished from accrual provision and limitations period designated for all other contracts), the majority's reluctance to identify an applicable limitations period for quantum meruit claims generally, or at least for Hannon's specific quantum meruit claim, actually precludes it from identifying the accrual date for that claim. Unlike the majority, I consider it clear that the determination of an accrual date for any particular civil action in this jurisdiction necessarily depends on the specific language of the statutory accrual formula, *see* §§ 13–80–108(1)—(13), corresponding to the limitations provision governing the particular class of civil action at issue, *see* §§ 13–80–101—107.5.

¶ 37 Although this court has never given its endorsement, the court of appeals has for some years bound the lower courts of this jurisdiction with its assessment that actions in quantum meruit, or unjust enrichment, are governed by section 13–80–101(1)(a), the three-year limitations period for contract actions. *See Rotenberg v. Richards,* 899 P.2d 365 (Colo.App.1995). Despite some unfortunate language to the effect that quantum meruit is a "theory of contract recovery," *Dudding v. Norton Frickey and Assocs.,* 11 P.3d 441, 446 (Colo.2000), we have always (including even in the very paragraph in which this language appeared) made clear that quantum meruit is not only not dependent upon the existence of a contract, either express or implied in fact, but is instead "a very different concept that balances the equities between the parties." *Id.* at 449. More recently, we have expressly characterized unjust enrichment, with which we have largely equated quantum meruit, as a broad remedy, "cutting across both contract and tort law," and found the unjust enrichment claim in that case to sound in tort rather than contract. *Robinson v. Colo. State Lottery Div.,* 179 P.3d 998, 1007 (Colo.2008). Unlike an express contract, whether written or oral, or even an implied-in-fact contract, all of which are contracts in the true sense that they involve an actual, if not always express, meeting of the minds of the parties, a claim in quantum meruit or unjust enrichment, sometimes referred to as a "quasi-contract" or a "contract implied-in-law," can exist only in the absence of a controlling agreement of the parties. Rather, much like a tort, such claims are predicated upon a duty imputed by law to refrain from retaining a benefit at the expense of another, under circumstances that would make it unjust to do so without paying for it. *Id.*

¶ 38 Unlike a number of other jurisdictions, Colorado's statutory scheme fails to expressly include quasi-contract in its provision for contract actions or, for that matter, in any other provision for a designated class of civil actions. The statutory scheme simply fails to provide for quantum meruit, or unjust enrichment, according to any accepted nomenclature. The legislature has, however, expressly provided for "[a]ll other actions of every kind for which no other period of limitation is provided" and imposed a two-year limitations period on all such actions. *See* § 13–80–102(1)(i). As the court of appeals discovered when it tried to deal with Hannon's quantum meruit claim in contract terms, the statutory provision for contract actions measures accrual from the discovery of a "breach." *See* § 13–80–108(6). Perhaps because the language of breach is so clearly inapplicable to a cause of action predicated upon the *non-existence* of a contract, the court of appeals chose, much like the majority does now, to simply ignore the language of the contract accrual provision and instead reformulate accrual for quantum meruit claims in general terms, borrowed from sources outside this body of statutory provisions. By contrast, the question addressed by both the court of appeals and the majority—whether Hannon's quantum meruit claim accrues from the time of his own conduct in contributing his legal services or the conduct of Merat and Howarth in unjustly retaining all of the recovered attorney fees—is most naturally governed by the language of section 13–80–108(8), which specifies that "a cause of action for losses or damages not

otherwise enumerated in this article shall be deemed to accrue when the injury, loss, damage, or conduct giving rise to the cause of action is discovered or should have been discovered by the exercise of reasonable diligence." Section 13–80–108(8), however, directly corresponds, by is owns terms, to section 13–80–102(1)(i), the catch-all provision for all other actions, which mandates that such actions be initiated within of two years of accrual.

¶ 39 Analyzed in terms of the statutory scheme, there can be little question but that Hannon's claim of quantum meruit was governed by the two-year statute of limitations and that it was therefore already barred by the time it was actually brought, whether the "conduct giving rise to the action" is considered to be the contribution of Hannon's legal services or Melat and Howarth's retention of attorney fees. That being the case, I consider it wholly unnecessary to determine the precise point of accrual. However, because the majority has done so and because under the appropriate statutory accrual formula the answer seems so clear, I note my agreement with the majority's ultimate conclusion that an action in quantum meruit accrues only upon the unjust retention of a benefit gained at the expense of another. In the language of section 13–80–108(8), it is clearly the retention of the benefit, without which no cause of action can exist, that "gives rise" to an action for quantum meruit.

¶ 40 Because I believe Hannon's claim was barred in any event, I also consider it unnecessary to comment on the applicability of the rules governing attorney-client contingent fee agreements. However, because the majority does so and because the answer again seems obvious, I agree that the rules governing contingent fees in Chapter 23.3 of the civil rules do not themselves bar Hannon's claim. By their express terms, they apply only to contingent fee contracts for legal services between attorneys and their clients. To the extent, however, the language of the majority opinion can be understood to suggest anything more about the viability of Hannon's quantum meruit claim in this case, I must caution that much of the rationale for adopting the rules governing contingent fee agreements is equally applicable to other claims in quantum meruit.

¶ 41 It is not unjust to retain benefits for which a contract between the parties contemplates that there be no payment, and a claim of quantum meruit could therefore not succeed on the basis of such a retention. Largely for this reason, and because a contingent fee agreement between a lawyer and his client might otherwise imply that no payment for services will be owed except upon the fulfillment of the contingency, we have required notice in the contingent fee agreement itself of any circumstances requiring payment of compensation by the client "otherwise than from amounts collected for him by the attorney." *See Mullens v. Hansel-Henderson*, 65 P.3d 992 (Colo.2002). While Rule 5 of Chapter 23.3 clearly governs only contingent fee agreements between attorneys and their clients, this fundamental limitation on recovery in quantum meruit is no less applicable to the terms of a fee sharing agreement among attorneys. I would therefore disavow any implication that the fee sharing agreement among these attorneys was not intended as the sole basis for sharing in any attorney fee award.

¶ 42 Finally, while I can appreciate the majority's concern for addressing issues on appeal not raised below, its rigid and mechanistic restatement of this complex principle is simply inaccurate and misleading. To be sure, we have indicated many times that, as a general matter, issues not presented to or raised in the trial court will not be considered on appeal. As we have also made abundantly clear, however, that broad proposition derives from a number of specific policies and court rules restricting a party's entitlement to review, without similarly depriving appellate courts of the discretion to address any error appearing of record, whether properly preserved or not. *See Roberts v. Am. Family Mut. Ins. Co.*, 144 P.3d 546, 549–51 (Colo.2006) (deconstructing the broad proposition in terms of its specific purposes, bases, and exceptions).

¶ 43 In light of C.A.R. 35(f), requiring as it does that the published opinions of the court of appeals be followed as precedent by the trial judges of the state, it would clearly have

been futile, if not improper, for a party to challenge *Rotenberg* in the trial court as having been wrongly decided. The defendants, of course, never relied on, or in any way attempted to use, the three-year statute of limitations to their advantage. Being bound by precedent as they were, they simply argued on alternative grounds for violation of the statute of limitations. By the majority's logic and overly rigid formulation of the review principle, although the court of appeals panel may have been at liberty to disagree with the earlier panels following *Rotenberg*, it would nevertheless have been precluded from doing so in the absence of the issue having been presented to the trial court. And by the same Catch–22–like logic of the majority, the well-being of "(o)ur judicial system" rests on the refusal of this court to address issues not expressly raised to the intermediate appellate or the trial court, whether or not those courts would have been barred from addressing them.

¶ 44 The question of the applicable statute of limitations, which the majority declines to address, does not involve a factual matter as to which deference would be required of a trial court determination. Nor does it involve a separate defensive provision of which the ruling court was never made aware. The applicable limitations provision is a matter upon which the legal correctness of both the court of appeals and majority rationales themselves depend. To closely paraphrase our holding in *Roberts*, at least where a misreading of the controlling law leads the court of appeals to reverse a summary judgment in the face of undisputed facts to the contrary, this court cannot be constrained by the failure of a party to specifically identify that misreading and bring it to the appellate court's attention. *Id.* at 551.

¶ 45 Notwithstanding the parties's failure to specifically dispute the applicability of the three-year statute of limitations, for the reasons I have briefly articulated I believe the issues presented by the petitioner cannot be resolved without reconsidering the nature of claims in quantum meruit and determining the limitations period made applicable to them by statute. I therefore respectfully dissent.