23CA0837 Marriage of Smith 11-27-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0837
Boulder County District Court No. 20DR30188
Honorable Thomas F. Mulvahill, Judge

---

In re the Marriage of

Sarah Bland Smith,

Appellee and Cross-Appellant,

and

James F. Butterworth,

Appellant and Cross-Appellee.

---

ORDERS AFFIRMED, ORDER REVERSED,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE LIPINSKY
J. Jones and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 27, 2024

---

Caplan and Earnest, LLC, Andrew C. Littman, Craig A. Weinberg, Boulder, Colorado, for Appellee and Cross-Appellant

Cox Baker Page & Bailey, LLC, James S. Bailey, Lone Tree, Colorado, for Appellant and Cross-Appellee

¶ 1    James F. Butterworth (husband) appeals the district court's orders entering judgment against him in the amount of $177,873 and denying his motion for a declaratory judgment. Sarah Bland Smith (wife) cross-appeals the court's order entering judgment against her in the amount of $44,524. We affirm the orders that husband appeals, reverse the order that wife cross-appeals, and remand the case for further proceedings on wife's request for an award of the appellate attorney fees she incurred in challenging the $44,524 judgment.

## I.    Relevant Facts and Procedural History

¶ 2    The parties stipulated to the appointment of former district court judge William G. Meyer as the private judge in their dissolution of marriage case, pursuant to section 13-3-111(1), C.R.S. 2024, and C.R.C.P. 122(a)(1). Judge Meyer presided over the dissolution proceedings, including the hearing on permanent orders.

¶ 3    Approximately five months after the permanent orders hearing, Judge Meyer dissolved the marriage and entered permanent orders dividing the parties' $49.5 million marital estate. As relevant here, Judge Meyer equally divided (1) a JP Morgan cash

and investment account (the JP Morgan account), with a value of more than $17 million; and (2) the parties' anticipated 2020 tax refund, with an estimated value of more than $400,000. Judge Meyer also allocated to wife (1) a Charles Schwab cash and investment account (the Schwab account), with a value of nearly $350,000; and (2) Rhizone Ventures, Ltd. (Rhizone), including approximately $5 million of the private equity interests held by Rhizone.

¶4 Husband and wife both moved for post-trial relief under C.R.C.P. 59 and 60, asking for amendments and corrections to the permanent orders. Among other issues, husband asserted that, between the time of the permanent orders hearing and the entry of the decree, the parties had spent or otherwise transferred to their individual accounts more than $1 million from the JP Morgan account and another joint account. He argued that Judge Meyer should amend the permanent orders to balance their post-hearing spending and transfers and that, based on his accounting, Judge Meyer should direct wife to make an equalization payment to husband in the amount of $44,524. Husband also informed Judge Meyer that he had received the parties' 2020 tax refund, in the

2

amount of $355,748, which he had deposited into the JP Morgan account.

¶ 5     Husband further asserted that his accounting of the post-hearing transfers reflected his transfer of $247,107 (including his half of the 2020 tax refund) from the JP Morgan account to the Schwab account. Husband said that the $44,524 equalization payment he was requesting from wife was conditioned on Judge Meyer's amendment of the allocation of the Schwab account. Husband requested that he be permitted to retain the $247,107.

¶ 6     In October 2022, Judge Meyer issued an order (the October 2022 order) resolving the parties' C.R.C.P. 59 and 60 motions. In the October 2022 order, Judge Meyer directed wife to pay husband $44,524 to balance the parties' post-hearing spending and transfers. Judge Meyer also determined that husband was entitled to $247,107 in the Schwab account and that he could either receive these funds or use them to offset a portion of the $500,711 he owed wife to equalize the allocation of the marital estate.

¶ 7     Husband appealed the permanent orders judgment, and a division of this court affirmed. *See In re Marriage of Smith*, 2024 COA 95, ¶¶ 1, 83, ___ P.3d ___, ___. In December 2022, Judge

3

Meyer issued an order (the first December 2022 order) allocating the right to claim the children as dependents for tax purposes. In addition, in response to the parties' emails following the entry of the October 2022 order, Judge Meyer issued an order (the second December 2022 order) declining to revisit the permanent orders.

¶ 8 Wife then filed a C.R.C.P. 70 motion (the C.R.C.P. 70 motion), arguing that husband had not executed the necessary documents to assign the Schwab account and Rhizone to her. In February 2023, Judge Meyer entered an order (the February 2023 order) directing the clerk of court to execute those documents on husband's behalf.

¶ 9 Wife also filed a motion for entry of a judgment against husband in the amount of $177,873, which represented her share of the 2020 tax refund that she had not received from husband.

¶ 10 Husband later moved for entry of a declaratory judgment determining that Judge Meyer's appointment had ended upon his resolution of the parties' post-trial motions and that he lacked jurisdiction to issue any orders, including orders for "enforcement remedies," following the entry of the October 2022 order.

¶ 11     Six days after husband filed his declaratory judgment motion, Judge Meyer voluntarily resigned from his appointment. An active judge on the district court then granted wife's motion for entry of judgment against husband in the amount of $177,873. The court also denied husband's declaratory judgment motion.

¶ 12     Husband filed a motion for post-trial relief from the $177,873 judgment under C.R.C.P. 59, 60, and 121. The court denied the motion.

¶ 13     Husband also moved for entry of a judgment against wife in the amount of $44,524, arguing that she owed him that sum under the October 2022 order. The court granted the motion, and it later denied wife's request to alter or amend the judgment.

## II.     Husband's Appeal

¶ 14     Husband appeals (1) the $177,873 judgment entered against him and (2) the denial of his motion for a declaratory judgment regarding Judge Meyer's jurisdiction.

### A.     The $177,873 Judgment Against Husband

¶ 15     Husband contends that the court misinterpreted Judge Meyer's amended permanent orders when it entered the $177,873 judgment against him. He specifically argues that, in the October

5

2022 order, Judge Meyer granted his request to balance the parties' post-hearing spending and transfers, and directed wife to pay husband $44,524. Husband claims that, by doing so, Judge Meyer necessarily concluded that the allocation of wife's share of the tax refund to her had been satisfied because husband had accounted for the allocation of the 2020 tax refund when husband determined that wife owed him $44,524. He argues that Judge Meyer determined that wife received her share of the tax refund and the court's later entry of judgment improperly modified the permanent orders. Wife responds that husband did not preserve these arguments for our review. We agree with wife and decline to review husband's unpreserved contention.

¶ 16    "Our judicial system depends upon the orderly presentation and preservation of issues." *Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.*, 2012 CO 61, ¶ 18, 287 P.3d 842, 847. A party's mere opposition to another party's request does not permit the party to seek all potential avenues for relief on appeal. *Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1188 n.4 (Colo. App. 2011). Rather, the party must have brought the specific issue to the district court's attention and provided the court with an

opportunity to rule on it. *In re Marriage of Pawelec*, 2024 COA 107, ¶ 38, ___ P.3d ___, ___. Arguments not raised in or decided by the district court will not be addressed for the first time on appeal. *Melat, Pressman & Higbie*, ¶ 18, 287 P.3d at 847; *see also Valentine*, 252 P.3d at 1188 n.4 ("We review only the specific arguments a party pursued before the district court.").

¶ 17     An appellant's opening brief must state whether a contention raised on appeal was preserved in the district court and, if so, give us "the precise location in the record where the issue was raised and where the court ruled." C.A.R. 28(a)(7)(A); *see O'Quinn v. Baca*, 250 P.3d 629, 631 (Colo. App. 2010). The appellate rules are not mere technicalities; they are essential to the administration of justice. *O'Quinn*, 250 P.3d at 631.

¶ 18     Husband asserted that he preserved his appellate arguments challenging the $177,873 judgment by timely objecting to wife's request for entry of judgment. To support his preservation claim, he directed us to a single page in the record — the first page of his response (the C.R.C.P. 70 response) to wife's C.R.C.P. 70 motion. However, in the C.R.C.P. 70 response, husband addressed wife's requests concerning the assignment of the Schwab account and

7

Rhizone, but he neither contested wife's motion for entry of judgment nor discussed the 2020 tax refund. *See* C.A.R. 28(a)(7)(A); *O'Quinn*, 250 P.3d at 631.

¶ 19 After wife pointed out that husband's citation to the first page of the C.R.C.P. 70 response did not support husband's preservation claim, husband said that his citation to a single page in the record was an "oversight," and he directed us to the pages of the record where he responded to wife's motion for entry of judgment. However, a review of this response does not support husband's claim of preservation either.

¶ 20 In her motion for entry of judgment, wife asked the court to enter a judgment in the amount of $177,873 for her share of the 2020 tax refund and an additional judgment in the amount of $456,187 for the money husband still owed her to equalize the allocation of the marital estate. In his response to the motion for entry of judgment, husband argued that wife's motion was an improper request to modify the court's permanent orders and that husband's pending appeal of the permanent orders judgment deprived the court of jurisdiction to modify any aspect of it.

¶ 21    Husband's argument in the response focused entirely on wife's request for the $456,187 judgment related to the unpaid equalization payment and wife's corresponding attempt to receive the funds in the Schwab account as partial payment on that judgment.  He did not argue in his response, as he does now, that the October 2022 order accounted for wife's share of the 2020 tax refund when the court directed wife to pay husband $44,524 to balance the parties' post-hearing spending and transfers.  Nor did he argue in the response that the $177,873 judgment was unwarranted because wife had already received her share of the 2020 tax refund.  Thus, husband never alerted the court to these issues, and he never gave it an opportunity to rule on the issues before it entered the $177,873 judgment against husband.  *See Melat, Pressman & Higbie*, ¶ 18, 287 P.3d at 847; *Valentine*, 252 P.3d at 1188 n.4.

¶ 22    Still, husband argues that, following the court's entry of the $177,873 judgment, he raised the "sum and substance" of his appellate arguments regarding the $177,873 judgment in his motion for C.R.C.P. 59, 60, and 121 relief, and that this post-trial motion preserved the issues for appeal.  But "[a]rguments made . . .

for the first time in a post-trial motion are too late and, consequently, are deemed waived for purposes of appeal." *Briargate at Seventeenth Ave. Owners Ass'n v. Nelson*, 2021 COA 78M, ¶ 66, 494 P.3d 1149, 1158; *see also People v. Schaufele*, 2014 CO 43, ¶ 49, 325 P.3d 1060, 1069-70 (Boatright, J., concurring in the judgment) ("Motions for reconsideration are designed to correct erroneous court rulings; they are not designed to allow parties to present new legal arguments for the first time and then appeal their denial . . . ."). Thus, husband's post-trial motion did not preserve his arguments regarding the $177,873 judgment for appellate review. *See Briargate*, ¶ 66, 494 P.3d at 1158.

¶ 23 To the extent husband further argues that the court erred by denying his C.R.C.P. 59, 60, and 121 motion as moot, we may affirm a court's ruling on any basis supported by the record. *See Million v. Grasse*, 2024 COA 22, ¶ 29, 549 P.3d 1043, 1049. And as noted, arguments raised for the first time in a post-trial motion are presented too late to serve as the basis for relief on appeal. *See Briargate*, ¶ 66, 494 P.3d at 1158.

¶ 24 Husband therefore did not adequately preserve his arguments concerning the $177,873 judgment, and we will not address them

for the first time on appeal. *See Melat, Pressman & Higbie*, ¶ 18, 287 P.3d at 847; *Valentine*, 252 P.3d at 1188 n.4. (Husband further asserts in his opening brief that wife's motion for entry of judgment did not include any rule or case law supporting wife's request for relief. Although husband raised a similar argument in his response to the motion for entry of judgment, we do not address the argument on appeal because husband does not support it with any meaningful legal analysis. *See In re Marriage of Zander*, 2019 COA 149, ¶ 27, 486 P.3d 352, 357, *aff'd*, 2021 CO 12, ¶ 27, 480 P.3d 676.)

## B. Judge Meyer's Authority

¶ 25 Husband next contends that the court incorrectly denied his motion for a declaratory judgment. He argues that, under the plain language of the parties' stipulation, Judge Meyer's appointment did not extend beyond his ruling on the parties' C.R.C.P. 59 and 60 motions concerning the permanent orders. Thus, he argues that the court erred by not concluding that Judge Meyer's orders entered after October 2022 were void. We discern no error.

### 1. Standard of Review

¶ 26 We review for an abuse of discretion a court's ruling on a request for entry of a declaratory judgment. *See Nash v. Mikesell*, 2024 COA 68, ¶ 15, 557 P.3d 369, 374. However, when the court's decision relies on its interpretation of an agreement or concerns a judge's authority to preside over a proceeding, we review the court's determination de novo. *See Markwell v. Cooke*, 2021 CO 17, ¶ 22, 482 P.3d 422, 426; *Egelhoff v. Taylor*, 2013 COA 137, ¶ 27, 312 P.3d 270, 274.

### 2. Discussion

¶ 27 Upon the parties' agreement, the chief justice may appoint a retired judge to preside over a dissolution case. § 13-3-111(1); C.R.C.P. 122(a)(1). The appointed judge "shall preside over all matters throughout the duration of the appointment." C.R.C.P. 122(j). The judge's "appointment shall last for so long as the parties specify in the motion and order of appointment." C.R.C.P. 122(d).

¶ 28 Husband and wife agreed that Judge Meyer would "preside over the issues in [their] dissolution of marriage action, through and including the permanent orders hearing, and all issues inherent therein, both procedural and substantive." They further

agreed that the "duration of Judge Meyer's appointment shall be until the entry of [p]ermanent [o]rders and a [d]ecree of [d]issolution of [m]arriage, *including ruling on any post-trial motions, if any, related to the [p]ermanent [o]rders*." (Emphasis added.)

¶ 29 The court concluded that, under the terms of the appointment, Judge Meyer had jurisdiction over all matters inherent in the implementation of the permanent orders. It determined that Judge Meyer's post-October 2022 orders were rulings on post-trial motions related to the permanent orders and, for that reason, they fell within Judge Meyer's jurisdiction.

¶ 30 According to husband, the court interpretated the phrase "any post-trial motions . . . related to the [p]ermanent [o]rders" too broadly. He acknowledges that the parties' agreement did not define this phrase, but he argues that, under "a more reasoned" interpretation, Judge Meyer's jurisdiction was limited to rulings on C.R.C.P. 59 and 60 motions related to the permanent orders.

¶ 31 The primary goal when interpreting an agreement is to determine and give effect to the parties' intent based primarily on the plain and ordinary language of the agreement. *Ad Two, Inc. v. City & Cnty. of Denver*, 9 P.3d 373, 376 (Colo. 2000). If

13

unambiguous, the court does not look beyond the terms of the agreement. *Id.* at 376-77. But the court may consider extrinsic evidence to determine the parties' intent if the language is ambiguous. *Id.* at 376.

¶ 32 The plain language of the parties' stipulation broadly extended Judge Meyer's appointment to "any post-trial motions . . . related to [p]ermanent [o]rders." A post-trial motion generally means a "motion made after judgment is entered." Black's Law Dictionary 1213, 1414 (12th ed. 2024); *see also Renfandt v. N.Y. Life Ins. Co.*, 2018 CO 49, ¶ 18, 419 P.3d 576, 580 ("When determining the plain and ordinary meaning of words, we may consider definitions in a recognized dictionary."). Moreover, "any" is an inclusive term commonly understood to mean "without limitation or restriction." *See Nat'l Farmers Union Prop. & Cas. Co. v. Estate of Mosher*, 22 P.3d 531, 534 (Colo. App. 2000). And "related to" encompasses all issues surrounding the underlying subject. *In re Estate of Gattis*, 2013 COA 145, ¶ 40, 318 P.3d 549, 558. Thus, the ordinary meaning of "any post-trial motions . . . related to [p]ermanent [o]rders" is any motion filed after the entry of judgment that encompass issues surrounding the permanent orders. Had the

14

parties intended to limit the meaning of this phrase to C.R.C.P. 59 and 60 motions, they could have said so in their stipulation. But they did not do so.

¶ 33    Husband suggests that such a broad interpretation means that Judge Meyer's appointment could last indefinitely and that such an interpretation is contrary to the "clearly contemplated . . . finite end" to a judge's appointment under C.R.C.P. 122. But contrary to his suggestion, C.R.C.P. 122 imposes no direct requirement that a judicial appointment under that rule must end. Rather, it permits the appointment to "last for so long as the parties specify." C.R.C.P. 122(d). Only in the absence of the parties' specification does the rule address the end of the appointment. *Id.*

¶ 34    Given the broad language in the stipulated appointment, we agree with the court that Judge Meyer had jurisdiction to enter the first December 2022 order. Wife filed her motion to allocate the right to claim the children as dependents for income tax purposes after the entry of permanent orders, and her request related to an issue surrounding the permanent orders — the determination of child support. *See* § 14-10-115(12), C.R.S. 2024.

¶ 35    We also agree with the court that Judge Meyer had jurisdiction to issue the February 2023 order.  Husband argues that the C.R.C.P. 70 motion concerned an enforcement remedy that fell outside Judge Meyer's jurisdiction.  But wife's request to have certain documents executed on husband's behalf sought to effectuate Judge Meyer's allocation of marital assets.  A court's authority to render a judgment includes the inherent power to enforce it.  *See Mulei v. Jet Courier Serv., Inc.*, 860 P.2d 569, 571 (Colo. App. 1993); *In re Marriage of Collins*, 2023 COA 116M, ¶ 64, 544 P.3d 1258, 1273 ("The district court is vested with the authority to enforce its orders concerning the dissolution of a marriage").  Thus, the C.R.C.P. 70 motion, filed after the entry of permanent orders, was within Judge Meyer's broad authority to rule on "any post-trial motions . . . related to [p]ermanent [o]rders." *Cf. In re Marriage of Dauwe*, 97 P.3d 369, 370 (Colo. App. 2004) (recognizing that C.R.C.P. 70 allows a court to enforce a prior court order); *Schnier v. Dist. Ct.*, 696 P.2d 264, 267 (Colo. 1985) (suggesting that a C.R.C.P. 70 motion can be considered a post-trial motion).

¶ 36    To the extent husband challenges the second December 2022 order, which Judge Meyer entered in response to the parties' emails concerning the October 2022 order and in which he declined to revisit the amended permanent orders, we again agree with the court that such ruling fell within Judge Meyer's broad authority. Even husband acknowledges that this order "could be construed as an order on post-trial motions." But even if we were to assume that the terms of the stipulated appointment were ambiguous, husband's conduct after the entry of the permanent orders also supports the court's conclusion that the parties intended Judge Meyer's appointment to continue past entry of the October 2022 order. *See Blecker v. Kofoed*, 672 P.2d 526, 528 (Colo. 1983) ("One of the most reliable indications of the true intent of the parties to a contract is their behavior and interpretation of the contract before a controversy arises."). Indeed, he (along with wife) directly asked for further relief from Judge Meyer following entry of the October 2022 order. That further relief included husband's request for an order allocating the tax credits or exemptions for the children.

¶ 37    The court therefore did not err by denying husband's motion for declaratory judgment.

## III. Wife's Cross-Appeal

¶ 38 In her cross-appeal, wife contends that the court erred by entering the $44,524 judgment against her. (The court's judgment against wife included other sums that Judge Meyer awarded to husband. We do not address the portions of the judgment awarding those other sums because wife does not challenge them in this appeal.)

¶ 39 She argues that, in the October 2022 order, Judge Meyer resolved her obligation to pay the $44,524 to husband by crediting this amount to him in determining the amount of money husband owed her to equalize the allocation of the marital estate. Thus, she argues that the court's entry of judgment allowed husband to recover this sum twice.

¶ 40 In response, husband concedes, and we agree, that, in light of the October 2022 order, the court erred by entering this judgment against wife. We therefore reverse the court's entry of the $44,524 judgment against wife and remand for the court to vacate it.

¶ 41 Wife also asks for an award of the attorney fees and costs she incurred in litigating her cross-appeal. She asserts that husband obtained the $44,524 judgment against her even though, in the

18

October 2022 order, Judge Meyer undeniably credited this sum to husband. Wife argues that husband's defense of the $44,524 judgment in the court and on appeal was frivolous, groundless, and vexatious, and forced her to incur the expenses associated with her cross-appeal. She notes, and husband does not dispute, that husband conceded — only after wife had briefed the issue on cross-appeal — that the court erred by entering the $44,524 judgment.

¶ 42     A court "shall assess attorney fees" upon a finding that an attorney or a party "brought or defended an action, or any part of an action, that lacked substantial justification" or "was interposed for delay or harassment." § 13-17-102(4), C.R.S. 2024. An action lacked substantial justification if it was "substantially frivolous, substantially groundless, or substantially vexatious." § 13-17-102(9)(a).

¶ 43     After the court entered the $177,873 judgment against husband, he sought the $44,524 judgment against wife. Wife objected and explained that Judge Meyer had already accounted for the $44,524 by crediting it against husband's equalization payment. Despite her explanation, husband continued to pursue the judgment, and the court granted his request. Wife sought relief

19

under C.R.C.P. 59 and 60, again explaining that husband had already received this money in the form of a credit, as specified in the October 2022 order. Husband said he disagreed, and the court denied wife relief.

¶ 44    But in response to wife's cross-appeal, husband changed his position and says he now agrees that the $44,524 judgment entered against wife should be set aside. Husband neither explained the reason for this late concession nor contested wife's request for an award of the attorney fees she incurred in challenging the judgment.

¶ 45    Under these circumstances, we award wife the attorney fees she incurred in connection with her cross-appeal because husband's litigious conduct unjustifiably forced wife to file the cross-appeal. *See Front Range Home Enhancements, Inc. v. Stowell*, 172 P.3d 973, 976 (Colo. App. 2007) ("A vexatious claim or defense is one brought or maintained in bad faith, which includes conduct that is arbitrary, abusive, stubbornly litigious, aimed at unwarranted delay, or disrespectful of truth and accuracy."). We remand the issue to the court to determine the reasonable amount

of the attorney fees to be awarded to wife in connection with her cross-appeal. *See* C.A.R. 39.1.

¶ 46 Costs are taxed in accordance with C.A.R. 39(a).

IV. Disposition

¶ 47 We affirm the $177,873 judgment entered against husband and the court's order denying husband's motion for a declaratory judgment. We reverse the $44,524 judgment entered against wife. The case is remanded to the court to vacate the $44,524 judgment and to determine the amount of the attorney fees to be awarded to wife consistent with this opinion.

JUDGE J. JONES and JUDGE SULLIVAN concur.