RICHMOND AMERICAN HOMES OF COLORADO, INC., Plaintiff–Appellant,

v.

STEEL FLOORS, LLC, a Colorado limited liability company; D & R Framing Contractors LLC, a Colorado limited liability company; Donna R. Arbogast, d/b/a D & R Framing Contractors; Steel T Heating & Air Conditioning, a Colorado corporation; Columbine Heating & Air Conditioning, Inc., a Colorado corporation; Haberkon Excavating, Inc., a Colorado corporation; BJ Haberkon Excavating; A.G. Wassenaar, Inc., a Colorado corporation; J.R. Drains, Inc.; Eastside Heating & Air Conditioning, Inc.; Richard H. Taylor, d/b/a Taylor Heating; and Taylor Heating & Air Conditioning, Inc., Defendants–Appellees.

No. 07CA1087.

Colorado Court of Appeals,
Div. V.

May 29, 2008.

Wells, Anderson & Race LLC, Mary A. Wells, David G. Mayhan, L. Michael Brooks, Jr., Denver, Colorado, for Defendant–Appellee Steel Floors, LLC.

Overturf McGath Hull & Doherty, P.C., Michael J. Mirabella, Scott A. McGath, Denver, Colorado, for Defendants–Appellees D & R Framing Contractors LLC and Donna R. Arbogast.

Zupkus & Angell, P.C., Robert A. Zupkus, Derek C. Blass, Denver, Colorado, for Defendant–Appellee Steel T Heating & Air Conditioning.

The Law Offices of David M. Bost, J. Barton Maxwell, Denver, Colorado, for Defendant–Appellee Columbine Heating & Air Conditioning, Inc.

Grund, Dagner & Nelson, P.C., Bruce B. McLarty, Denver, Colorado, for Defendants–Appellees Haberkon Excavating, Inc. and BJ Haberkon Excavating.

Jackson Kelly PLLC, Timothy M. Schulte, Denver, Colorado, for Defendant–Appellee A.G. Wassenaar, Inc.

Seaman, Murphy & Chambers, P.C., David L. Murphy, Erin K. Young, Greenwood Village, Colorado, for Defendant–Appellee J.R. Drains, Inc.

Montgomery Little Soran & Murray, P.C., Daniel P. Murphy, Michael J. Decker, Greg R. Lindsay, Greenwood Village, Colorado, for Defendant–Appellee Eastside Heating & Air Conditioning, Inc.

Harris, Karstaedt, Jamison & Powers, P.C., Janet S. Wells, Englewood, Colorado, for Defendants–Appellees Richard H. Taylor and Taylor Heating & Air Conditioning, Inc.

Opinion by Judge GRAHAM.

In this construction defect case, plaintiff, Richmond American Homes of Colorado, LLC (Richmond), appeals the trial court's judgment dismissing as time barred certain claims against defendants, Steel Floors, LLC; D & R Framing Contractors LLC; Donna R. Arbogast; Steel T Heating & Air Conditioning; Columbine Heating & Air Conditioning, Inc.; High Country Drains & Waterproofing, Inc.; Haberkon Excavating, Inc.; BJ Haberkon Excavating; A.G. Was-

Holley, Albertson & Polk, P.C., Scott D. Albertson, Dennis B. Polk, Eric E. Torgersen, Golden, Colorado, for Plaintiff–Appellant.

senaar, Inc.; J.R. Drains, Inc.; Eastside Heating & Air Conditioning Inc.; Richard H. Taylor; and Taylor Heating & Air Conditioning, Inc. We reverse and remand for further proceedings.

Richmond built single family homes in the Front Range and hired defendants as subcontractors to perform various facets of the work on the homes.

Between June 2002 and March 2006, numerous homeowners contacted Richmond with complaints of water intrusion in and beneath the suspended structural basement floors. As a result, Richmond repaired and remediated the defects in approximately 3,000 homes. As relevant here, the homeowners did not file a construction defect lawsuit against Richmond. Additionally, none of the homeowners executed releases of liability in favor of Richmond or otherwise relinquished the right to sue Richmond in the future for the problems Richmond's remediation work was intended to correct.

On March 10, 2004, Richmond filed a complaint against defendants for negligence, breach of contract, and breach of express warranties, seeking damages based upon defective workmanship on the homes. Richmond filed a motion for leave to amend the complaint, seeking to increase the number of homes subject to this action. The trial court granted the motion in part and ordered Richmond to disclose information concerning the homes. Richmond filed supplemental C.R.C.P. 26(a)(1) disclosures, including a spreadsheet that separately listed each of the approximately 3,000 homes and specified the dates when Richmond had completed repairs on each home.

In response to the disclosures filed by Richmond, defendants filed a motion for determination of a question of law pursuant to C.R.C.P. 56(h), seeking a determination that Richmond cannot recover "any costs associated with repairs [to homes] made more than ninety (90) days" before the original complaint was filed pursuant to the ninety-day period set forth in section 13–80–104(1)(b)(II), C.R.S.2007.

The trial court granted defendants' motion, concluding that section 13–80–104(1)(b)(II)

"applies to and governs the filing requirements of complaints against subcontractors such as the Defendants in this case" and, therefore, Richmond "had ninety days to bring suit against its subcontractors after resolving claims with homeowners." The court denied Richmond's motion for reconsideration, but granted Richmond's motion for certification under C.R.C.P. 54(b) and entered a final judgment as to all matters covered by its ruling.

## I. C.R.C.P. 54(b) Certification

Before proceeding to the merits of Richmond's appeal, we must first consider whether the trial court's ruling was properly entered as a final judgment under C.R.C.P. 54(b) and is, consequently, appropriate for appellate review. We agree that C.R.C.P. 54(b) certification was proper.

C.R.C.P. 54(b) permits a court, in an action involving multiple parties or multiple claims for relief, to direct entry of a final judgment as to fewer than all the claims or parties. The rule provides an exception to the general rule that an entire case must be resolved by a final judgment before an appeal is brought. Accordingly, our jurisdiction to entertain the appeal of a decision so certified depends upon the correctness of the certification. *Harding Glass Co. v. Jones,* 640 P.2d 1123, 1126 (Colo.1982); *Carothers v. Archuleta County Sheriff,* 159 P.3d 647, 651 (Colo.App.2006).

A trial court may issue a C.R.C.P. 54(b) certification only if three requirements are met: (1) the decision certified must be a ruling upon an entire claim for relief; (2) the decision certified must be final in the sense of an ultimate disposition of an individual claim; and (3) the trial court must determine that there is no just reason for delay in entry of a final judgment on the claim. While the "no just reason for delay" question is committed to the trial court's discretion, that court's determinations regarding the other two requirements are "not truly discretionary." *Lytle v. Kite,* 728 P.2d 305, 308 (Colo. 1986); *see also Georgian Health Ctr., Inc. v. Colonial Painting, Inc.,* 738 P.2d 809, 810 (Colo.App.1987); *Harding Glass Co.,* 640 P.2d at 1125. *But see Kempter v. Hurd,* 713

P.2d 1274, 1279 (Colo.1986) (trial court's decision on finality "should be given substantial deference because that court is the one most likely to be familiar with the case"); *State ex rel. Salazar v. Gen. Steel Domestic Sales, LLC,* 129 P.3d 1047, 1049 (Colo.App.2005) (reviewing court should scrutinize the trial court's evaluation of the interrelationship of claims and where the trial court's reasoning is clear, some deference should be given).

■ Thus, we review de novo the legal sufficiency of the trial court's C.R.C.P. 54(b) certification. *Carothers,* 159 P.3d at 651.

Here, the trial court found that its order resolved an entire claim for relief, noting that Richmond's "claim for each home is a separate 'claim for relief'" and that Richmond could "recover damages separately for each home involved in this case." The court did not view as dispositive the characterization of Richmond's claims in its second amended complaint, recognizing that the claims had been supplemented by the spreadsheet which itemized the remediated homes. The court determined that its order was an "ultimate disposition of an entire claim" because it is "tantamount to entry of summary judgment against Richmond as to each home ... for which Richmond completed remediation more than ninety days before March 10, 2004, i.e., the date on which Richmond filed this lawsuit." In explaining its finding of "no just reason for delay," the court noted that "litigating this action will be time-consuming and expensive for all parties" and that "it would be an undue hardship on [Richmond] to litigate this matter with the possibility of recovering only approximately twenty-five percent of its asserted remediation damages before [Richmond] can appeal."

Defendants, on the one hand, contend that the trial court's order did not dispose of any claim for relief in its entirety because Richmond's entitlement to damages for claims of negligence, breach of contract, and breach of warranty based upon the alleged construction defects in the remaining homes still could be litigated. Richmond, on the other hand, argues that each home constituted a separate claim for relief and, therefore, the trial court's order is a ruling on an entire

claim for relief pursuant to C.R.C.P. 54(b). We agree with Richmond.

■ A "claim" is the aggregate of operative facts which give rise to a right enforceable in the courts, and the ultimate determination of multiplicity of claims rests on whether the underlying factual bases for recovery state a number of different claims which could have been separately enforced. *Kempter,* 713 P.2d at 1278; *Corporon v. Safeway Stores, Inc.,* 708 P.2d 1385, 1388 (Colo.App.1985).

■ A claimant pleads multiple claims for purposes of C.R.C.P. 54(b) when more than one recovery is possible and when a judgment on one claim would not bar a judgment on other claims. *Georgian Health Ctr., Inc.,* 738 P.2d at 810.

> Where it is questionable whether there is one claim or there are multiple claims, but the trial court treats the case as an action involving multiple claims, makes an adjudication of one or more but fewer than all the claims, and accompanies that adjudication with its [C.R.C.P.] 54(b) certificate, that decision should be given substantial deference because that court is the one most likely to be familiar with the case.

*Kempter,* 713 P.2d at 1279 (citing *Curtiss–Wright Corp. v. Gen. Elec. Co.,* 446 U.S. 1, 10, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980)).

In applying these principles to this case, we conclude that the trial court's ruling disposed of separate and distinct claims. Richmond's second amended complaint included a spreadsheet that listed separately each home for which Richmond was seeking damages. Richmond could have enforced each individual claim in a separate lawsuit rather than joining them together in a single civil action grouped under generic claims of negligence, breach of contract, and breach of warranty. Thus, the second amended complaint, coupled with the detail of Richmond's spreadsheet, demonstrates that the underlying factual basis for recovery includes a number of different claims subject to separate enforcement. It is not determinative that Richmond did not set forth separately numbered counts for each home in its complaint; it is the

substance of the claims which must be analyzed. *See id.*

Further, an adjudication of those claims based on the homes that Richmond repaired more than ninety days before commencement of this action would not bar Richmond from receiving a verdict on the remaining homes because a claim for damages for each home is a separate claim. *See Georgian Health Ctr., Inc.,* 738 P.2d at 810.

In any event, we give some deference to the trial court's analysis. Here, the trial court carefully evaluated the claims and explained that Richmond's use of a spreadsheet to request indemnity for its clearly specified work, performed on specific homes, in effect amended its general claims to seek indemnity for each home as a separate claim. Thus the trial court's order disposed of each of these claims and satisfied the prerequisites for C.R.C.P. 54(b) certification. *Cf. Gen. Steel Domestic Sales, LLC,* 129 P.3d at 1050 (C.R.C.P. 54(b) certification improper where the restitution for each consumer constituted a single claim for relief and CCPA contemplates restitution as part of a single claim brought by attorney general).

Finding as we have that Richmond has stated multiple separate claims for purposes of C.R.C.P. 54(b) and the trial court's order disposed of entire individual claims, we conclude that the trial court properly certified its order as final and, therefore, consider the merits of Richmond's appeal.

## II. Section 13–80–104(1)(b)(II)

Richmond contends that the trial court wrongly interpreted section 13–80–104(1)(b)(II)(B), C.R.S.2007. We agree.

Matters of statutory interpretation raise questions of law that we review de novo. In reviewing a statute, it is our duty to effectuate the intent and purpose of the General Assembly. *See Weld County Sch. Dist. RE–12 v. Bymer,* 955 P.2d 550, 554 (Colo.1998). When possible, we discern the intent of the General Assembly from the plain and ordinary meaning of the statutory language. *People v. Longoria,* 862 P.2d 266, 270 (Colo.1993). Interpretations that defeat the obvious legislative intent should be avoid-

ed, and, when possible, a statute should be interpreted so as to give consistent and sensible effect to all its parts. *People v. Dist. Court,* 713 P.2d 918, 921 (Colo.1986). We presume that the General Assembly intends a just and reasonable result when it enacts a statute, and we will not follow a statutory construction that leads to an unreasonable or absurd result. *Reg'l Transp. Dist. v. Lopez,* 916 P.2d 1187, 1192 (Colo.1996).

Subsection (1)(a) of section 13–80–104 imposes a general two-year statute of limitations, which runs from the date on which a claimant discovers or should have discovered a construction defect, on "all actions against any architect, contractor, builder or builder vendor, engineer, or inspector performing or furnishing the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property." It also imposes a six-year statute of repose on all such claims regardless of discovery.

However, subsection (1)(b)(II) of the statute provides for a ninety-day period within which certain construction defect claims must be brought:

> Notwithstanding the provisions of paragraph (a) of this subsection (1), all claims, including, but not limited to indemnity or contribution, by a claimant against a person who is or may be liable to the claimant for all or part of the claimant's liability to a third person:
>
> (A) Arise at the time the third person's claim against the claimant is settled or at the time final judgment is entered on the third person's claim against the claimant, whichever comes first; and
>
> (B) Shall be brought within ninety days after the claims arise, and not thereafter.

Subsection (1)(b)(II) was enacted in 2001 along with the Construction Defect Action Reform Act (CDARA), sections 13–20–801 to –807, C.R.S.2007.

The parties disagree whether the two-year statute of limitations or the ninety-day provision applies. We conclude that the ninety-day period set forth in section 13–80–104(1)(b)(II) does not operate to bar Richmond's indemnity claims here because the

homeowners neither "settled" any claims nor filed a construction defect lawsuit against Richmond whereby a final judgment could be entered on such claims. In our view, repairing damages to an existing home in the absence of a formal complaint, arbitration proceeding, or settlement of a dispute where the homeowner has bargained for work in exchange for a release of a construction professional's liability does not involve the resolution of a "claim" for purposes of triggering the ninety-day period in section 13–80–104(1)(b)(II). We view that provision as applying to either the resolution of disputes which has resulted in a final judgment or the settlement of an action or claim of liability which a third party could or actually did commence against the claimant. Accordingly, we agree with Richmond that the trial court erred in concluding that claims based on homes that Richmond repaired more than ninety days before March 10, 2004 are barred by the ninety-day statute of limitations. Our conclusion is based upon the language of the statute, its legislative history, and the case law interpreting it.

*CLPF–Parkridge One, L.P. v. Harwell Investments, Inc.,* 105 P.3d 658 (Colo.2005), determined that the purpose of section 13–80–104(1)(b)(II) was to streamline construction defect litigation by allowing the addition of third-party subcontractors alleged to be responsible for the complained-of defect, and to defer the running of the statute of limitations on indemnity and contribution claims that general contractors may have against the subcontractor. That is, the subsection's purpose was to "allow the general contractor time to sort out who truly should be brought into the lawsuit and who can be brought out, or left out." *CLPF–Parkridge One,* 105 P.3d at 664 (emphasis omitted) (quoting Hearings on H.B. 01–1166 before the Senate Business Affairs and Labor Committee, 63d Gen. Assemb., 1st Reg. Sess. (Mar. 21, 2001) ). The supreme court determined that "the legislative history of CDARA reveals that the legislature intended section 13–80–104(1)(b)(II) to operate as a statute of limitations tolling provision." *Id.* at 663.

Thus, the supreme court concluded that indemnity and contribution claims brought by defendants against other parties alleged to be responsible for a construction defect could be brought either in a construction defect lawsuit or in a separate lawsuit. However, the court concluded, if brought in the latter, such a separate lawsuit must be commenced within ninety days "after settlement or judgment in *the construction defect lawsuit." Id.* at 665 (emphasis added).

In *Fire Insurance Exchange v. Monty's Heating & Air Conditioning,* 179 P.3d 43 (Colo.App.2007) (*Monty's* ), a division of this court determined that, in section 13–80–104(1)(b)(II), the phrase "all claims" refers to claims "by a claimant against a person who is or may be liable to the claimant for all or part of the *claimant's liability to a third person." Monty's,* 179 P.3d at 45 (emphasis added). Thus, in the context of section 13–80–104(1)(b)(II), " 'all claims' " are limited to "those claims made by a 'claimant' for recovery for the 'claimant's' *liability to a third person." Id.* at 45–46 (emphasis added). The division in *Monty's* concluded that an insurer who brought a subrogation action against an air conditioning subcontractor for damages caused by a defective air conditioner was not a "claimant" within the scope of section 13–80–104(1)(b)(II) because it was not a construction professional. The division concluded that "claimants" under that section were those who were defendants in an underlying construction defect lawsuit and who were seeking recovery against construction professionals for claims brought by third persons against the claimant. *Id.* at 46.

In interpreting the terms "all claims" and "claimant" in section 13–80–104(1)(b)(II), the division in *Monty's* found the *CLPF–Parkridge One* court's "extensive discussion" of section 13–80–104(1)(b)(II)'s purpose instructive and concluded,

> [I]t is apparent that, in contrast to § 13–80–104(1)(a) and (b)(I), which apply a two-year statute of limitations to actions brought by construction defect plaintiffs against construction professionals such as builders and contractors, the ninety-day tolling provision set forth in § 13–80–104(1)(b)(II) concerns, *not construction defect plaintiffs, but construction professionals, who are the defendants in the con-*

*struction defect lawsuit and who may have their own claims against third parties.*

*Id.* (emphasis added).

The division explained that, because section 13–80–104(I)(b)(II) has a different function from section 13–80–104(1)(a) and (b)(I), the General Assembly used the terms "claimant" and "third person" differently in section 13–80–104(1)(b)(II) than in the rest of the statute. *Id.* The division thus concluded that for the purpose of section 13–80–104(1)(b)(II), the General Assembly intended that

1. the "claimant" is not a plaintiff in the underlying construction defect lawsuit, but is *the defendant construction professional in the underlying lawsuit;*

2. because a *"claimant" is the defendant construction professional in the underlying lawsuit,* a construction defect plaintiff (the "claimant" under § 13–80–104(a)and (b)(I) ), is a "third person" to whom a "claimant" construction professional is or may be liable; and

3. the "third person's claim against the claimant," as set forth in § 13–80–104(1)(b)(II), refers to the *construction defect plaintiff's underlying lawsuit against the construction professional.*

*Id.* (emphasis added).

Accordingly, the division held that

the statutory trigger set forth in § 13–80–104(1)(b)(II) (the claim arises when the "third person's claim against the claimant is settled or … final judgment is entered") refers to the *underlying lawsuit, and it is the construction professional, the defendant in the underlying lawsuit* and the "claimant" referred to in § 13–80–104(1)(b)(II), who has only ninety days after a settlement or judgment to file a separate lawsuit seeking indemnification, contribution, or the like.

*Id.* at 46–47 (emphasis added); *cf. CLPF–Parkridge One,* 105 P.3d at 664 (court concluded that the intent of the General Assembly was that the ninety-day limitations period was a tolling provision and would not be triggered as to builder's third-party claims until "court judgment is entered and settlement is reached").

Here, although Richmond is a constructional professional—unlike the plaintiff in *Monty's*—it is not seeking to recover for liability to a third person as a result of a construction defect lawsuit, but instead is seeking to recover damages it suffered in performing warranty and repair work in the normal course of customer service.

We reject defendants' assertion that, although no lawsuits were filed by the homeowners against Richmond, the ninety-day provision in section 13–80–104(1)(b)(II) nevertheless applied because Richmond "settled" the homeowners' construction defect claims when it repaired the defects in the homes. The analysis in *Monty's* is based upon the premise that the ninety-day tolling provision set forth in section 13–80–104(1)(b)(II) "concerns, not construction defect plaintiffs, but construction professionals, who are the defendants *in the construction defect lawsuit* and who may have their own claims against third parties." *Monty's,* 179 P.3d at 46 (emphasis added).

We acknowledge that *Monty's* and *CLPF–Parkridge One* involved actual lawsuits over construction defects, and therefore, defendants urge us to read the statutory language more broadly, to provide that the ninety-day period may be triggered even if the homeowner does not file an actual construction defect lawsuit. In other words, in defendants' view, section 13–80–104(1)(b)(II) is triggered not only when an underlying construction defect action has been filed against a construction professional, but also when a claim is settled by the construction professional in situations where no lawsuit has been filed. And, for defendants, in this case, Richmond's work constituted a settlement. We do not read the statutory language so broadly.

The plain language of the statute speaks to the trigger of the ninety-day period when there is either settlement of, or final judgment on, a claim by a third party against the construction professional. Nothing in the statute leads us to believe we should interpret the type of claim made in the context of a final judgment (in a construction defect lawsuit) to be different from the type of claim made in the context of settlement. In either

case, it seems reasonably clear that the claim must be related to a construction defect for which the third-party homeowner seeks to assess liability against the construction professional.

Even if we were to read the statute as broadly as defendants suggest, thereby construing the reparation work to be in response to a homeowner's claim, the record before us shows that, except for claims relating to eleven homes that were repurchased by Richmond, there was never a settlement of the homeowners' claims and, therefore, the ninety-day period was not triggered. The statute's reference to settlement of a third person's claim against the construction professional defendant necessarily means settlement of an underlying lawsuit or the relinquishment of a claim and release of liability. *See Black's Law Dictionary* 1405 (8th ed.2004) ("full settlement" is defined as a "settlement and release of all pending claims between the parties," and "out-of-court settlement" is defined as the "settlement and termination of a pending suit, arrived at without the court's participation").

CDARA does not define the term "settlement." However, we interpret a settlement as something that requires a release or relinquishment of liability. Restatement (Third) of Torts: Apportionment of Liability section 24 (2000) provides a definition of settlement in the context of tort claims:

(a) A settlement is a legally enforceable agreement in which a claimant agrees not to seek recovery outside the agreement for specified injuries or claims from some or all of the persons who might be liable for those injuries or claims.

(b) Persons released from liability by the terms of a settlement are relieved of further liability to the claimant for the injuries or claims covered by the agreement, but the agreement does not discharge any other person from liability.

Here, it is undisputed that, except as to the eleven homes previously mentioned, no claims were settled, regardless of whether they had been advanced as construction defect lawsuits or the threat of construction defect lawsuits, because the homeowners executed no releases of Richmond and were free to pursue claims if they chose to do so.

We therefore conclude that a construction professional such as Richmond does not advance a claim of indemnity against another construction professional which is sufficient to trigger the statutory ninety-day period unless and until it is a defendant in a construction defect action commenced by a third party which has either been reduced to judgment or which has nevertheless been settled by a release of liability.

Consequently, we hold Richmond's claims are subject to the two-year statute of limitations, not the ninety-day statute of limitations tolling provision.

Based on this disposition, we need not address the other arguments raised by the parties.

The judgment is reversed, and the case is remanded to the trial court with directions to reinstate Richmond's claims against defendants.

Judge VOGT and Judge LICHTENSTEIN concur.