2013 COA 146

**COLORADO COMMUNITY BANK,**
Plaintiff–Appellee

and

Victor Harshberger, Kenneth Adelberg, and Robert Williams, Intervenors–Appellees,

v.

Walter E. "Gene" HOFFMAN and Oxford Resource & Management, Inc., Defendants–Appellants.

Court of Appeals No. 12CA1713

Colorado Court of Appeals, Div. VI.

Announced November 7, 2013

Bloom Murr Accomazzo & Siler, PC, Joseph A. Murr, Daniel R. Delaney, Denver, Colorado, for Plaintiff–Appellee

Silver & DeBoskey, A Professional Corporation, Thomas M. Haskins III, Robert R. Marsh, Ruba M. Forno, Kevin J. Burns, Denver, Colorado, for Intervenors–Appellees

Miller & Law, P.C., James F. Scherer, Littleton, Colorado, for Defendants–Appellants

Opinion by JUDGE GABRIEL

¶1 In this action arising from the judicial dissolution of certain companies in the course of a receivership proceeding, defendants, Walter E. "Gene" Hoffman and Oxford Resource & Management, Inc., attempt to appeal from orders certified as final under C.R.C.P. 54(b) and appeal from orders granting summary judgment to intervenors, Victor Harshberger, Kenneth Adelberg, and Robert Williams, on defendants' counterclaims for abuse of process and civil conspiracy. We conclude that we lack jurisdiction over the orders certified as final under C.R.C.P. 54(b) because defendants did not appeal those orders within forty-five days of the certification. We further conclude that the district court did not err in granting summary judgment to the intervenors on defendants' counterclaims. Accordingly, we dismiss the appeal in part and affirm the judgment in all other respects.

## I. Background

¶2 Hoffman was the president and chief executive officer of Oxford. Oxford and intervenors Adelberg and Williams owned equity membership interests in KDGC Holdings, LLC (Holdings). Holdings, in turn, was the parent of three operating subsidiaries (collectively, the subsidiaries), which served as the ownership structure for three golf courses. Hoffman served as general manager of all of the entities owned by Holdings.

¶3 Plaintiff, Colorado Community Bank (the Bank), made several loans to finance Holdings' acquisitions of two of the golf courses. As pertinent here, Hoffman and one of the subsidiaries jointly executed a promissory note and related loan documents in favor of the Bank in connection with one of the loans. Hoffman and the subsidiary, however, subsequently defaulted on this loan.

¶4 In addition, allegations surfaced that Hoffman, personally and through Oxford, among other entities, had mismanaged Holdings and its related entities, had engaged in self-dealing, and had breached his fiduciary duties by, among other things, diverting substantial assets of these companies to his personal use.

¶5 As a result of the foregoing, the Bank sued Hoffman, Oxford, and various other entities for breach of the above-described loan documents and sought the appointment of a receiver. The intervenors joined in the request for a receiver and asserted various additional claims against Hoffman, Oxford, and several of their related entities. The district court subsequently granted the request for the appointment of a receiver.

¶6 Thereafter, Hoffman and, ultimately, Oxford filed counterclaims against, among others, the intervenors for, as pertinent here, abuse of process and civil conspiracy. In their counterclaims, Hoffman and Oxford alleged that in pursuing claims and remedies against them, the intervenors had an ulterior purpose of obtaining a receiver in order to oust defendants from the control and management of, and to deprive them of their ownership and equity interests in, Holdings.

¶7 Subsequently, the receiver sought authority to sell the assets of Holdings and the three subsidiaries to Tri–Lakes Golf, LLC, a company formed and operated by the intervenors and one of their business associates. As part of this transaction, Tri–Lakes would assume all of the subsidiaries' secured liabilities, as well as certain liabilities of the subsidiaries that intervenors Adelberg and Harshberger had previously assumed. In support of his application to conduct this proposed sale, the receiver asserted that the subsidiaries had no ability to be self-sufficient or profitable and that under the circum-

stances, such an asset sale would be "the most practical and useful solution."

¶ 8 After a hearing, the district court granted the receiver's application, ultimately issuing two written orders (the sale orders). In so ruling, the court reasoned that its power to grant the application was derived not from its general equity authority, but from its power to effect a judicial dissolution. The court further opined that such a dissolution was appropriate because the subsidiaries were in a "deadlock," were insolvent, and were unable to continue to operate absent an appropriate change in their circumstances.

¶ 9 As a result of the foregoing transactions, Tri–Lakes appears to have acquired the Bank's claims against defendants. Moreover, although the record is unclear, Tri–Lakes appears to have then been substituted for the Bank as plaintiff and to have withdrawn all claims brought by the Bank, other than those concerning the receivership.

¶ 10 After the assets of Holdings and the subsidiaries were sold, the intervenors moved to certify the sale orders as final under C.R.C.P. 54(b). Over Hoffman's objection, on December 13, 2010, the district court granted the intervenors' motion. As pertinent here, the court concluded that (1) the sale orders arose from an aggregate of operative facts relating to the appointment of a receiver and the disposition of assets under the jurisdiction and control of the court and the receiver; (2) the claims determined by such orders were separate and distinct from the other claims in the case; (3) there was nothing further to be done with respect to the claims for the appointment of a receiver and the sale of the assets; and (4) the sale orders reflected the ultimate disposition of the claims related therein, and there was no just reason for delay in entering final judgment. Defendants, who were proceeding pro se at the time, did not file an appeal of this order within forty-five days.

¶ 11 Thereafter, the receiver submitted his final report and requested that the court discharge him from any further responsibilities. The district court granted this request.

¶ 12 The intervenors then moved for summary judgment on defendants' counterclaims for abuse of process and civil conspiracy, and the court ultimately granted these motions. As pertinent here, the court concluded that the intervenors had engaged in no wrong because they had merely pursued rights that they were accorded by law and agreement.

¶ 13 Thereafter, the intervenors stipulated to the dismissal of their remaining claims against defendants, and the court dismissed those claims with prejudice. At that point, there were no remaining claims pending among the parties, and the judgment became final.

¶ 14 Within forty-five days of the dismissal, defendants filed their notice of appeal.

## II. The Sale Orders

¶ 15 Defendants contend that the district court erred in numerous ways when it issued the sale orders. The Bank and the intervenors assert, however, that we should not consider these arguments because defendants' appeal of the sale orders was untimely, having not been filed within forty-five days of the district court's C.R.C.P. 54(b) certification. Toward that end, the Bank and the intervenors have moved to dismiss that portion of this appeal.

¶ 16 Defendants respond that because the sale orders were not properly subject to certification under C.R.C.P. 54(b), the certification was a nullity. They thus contend that their time to appeal did not begin to run until after all of the claims in this case were finally resolved.

¶ 17 As an apparent matter of first impression in Colorado, we conclude that the district court properly certified the sale orders under C.R.C.P. 54(b) because, in our view, those orders constituted the resolution of a single and separable claim for relief within the meaning of the rule. In light of this ruling, we further conclude that defendants' appeal of the sale orders was untimely, and we dismiss that portion of their appeal.

## A. C.R.C.P. 54(b) and Standard of Review

C.R.C.P. 54(b) provides, in pertinent part:
When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim or third-party

claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

¶ 18 This rule thus provides an exception to the general rule that an entire case must be resolved by a final judgment before an appeal is brought. *Richmond Am. Homes of Colo., Inc. v. Steel Floors, LLC,* 187 P.3d 1199, 1202 (Colo.App.2008).

¶ 19 To determine whether to issue a C.R.C.P. 54(b) certification, a district court must engage in the following three-step process:

> First, the decision certified must be a ruling upon an entire claim for relief. Second, the decision certified must be final in the sense of an ultimate disposition of an individual claim. Third, the trial court must determine whether there is just reason for delay in entry of a final judgment on the claim.

*Lytle v. Kite,* 728 P.2d 305, 308 (Colo.1986).

¶ 20 Although the question of whether there is "no just reason for delay" is committed to the district court's sound discretion, that court's determinations regarding the other two requirements are "not truly discretionary." *Id.; accord Harding Glass Co. v. Jones,* 640 P.2d 1123, 1125 (Colo.1982). *But cf. Richmond Am. Homes,* 187 P.3d at 1203–04 (stating that "we review de novo the legal sufficiency of the trial court's C.R.C.P. 54(b) certification," but then stating that "we give some deference to the trial court's analysis"); *State ex rel. Salazar v. Gen. Steel Domestic Sales, LLC,* 129 P.3d 1047, 1049 (Colo.App.2005) (noting that an appellate court's review of the district court's evaluation of such factors as the interrelationship of the claims in a case "approaches de novo review because an appellate court has an independent duty to ensure that limits on its jurisdiction are observed," but further noting that "some deference should be given where the district court has made its reasoning clear"). The district court cannot, in the exercise of discretion, treat as final that which is not final. *Lytle,* 728 P.2d at 308; *Harding Glass,* 640 P.2d at 1125.

### B. "Entire Claim for Relief"

¶ 21 Here, defendants assert that their appeal of the sale orders was timely because the C.R.C.P. 54(b) certification was improper. Specifically, they contend that the sale orders did not dispose of any claim because the receivership proceedings were still ongoing when the C.R.C.P. 54(b) certification was granted. Thus, they argue that their time to appeal did not begin running until after the intervenors dismissed the last of their remaining claims. We are not persuaded.

¶ 22 Under C.R.C.P. 54(b),

> [a] 'claim' is the aggregate of operative facts which give rise to a right enforceable in the courts, and the ultimate determination of multiplicity of claims rests on whether the underlying factual bases for recovery state a number of different claims which could have been separately enforced. A claimant pleads multiple claims for purposes of C.R.C.P. 54(b) when more than one recovery is possible and when a judgment on one claim would not bar a judgment on other claims.

*Richmond Am. Homes,* 187 P.3d at 1203 (citations omitted).

¶ 23 Although we are unaware of any published decision of a Colorado appellate court analyzing whether an asset sale order in the course of a receivership proceeding constitutes the disposition of a "claim" for purposes of C.R.C.P. 54(b), several Colorado courts have suggested that orders concerning property ownership could properly be certified. For example, in *Corporon v. Safeway Stores, Inc.,* 708 P.2d 1385, 1388 (Colo.App.1985), the division stated, "[A] quiet title claim is separable from slander and defamation claims, and therefore, properly certifiable under C.R.C.P. 54(b)." *See also Sisneros v. First Nat'l Bank,* 689 P.2d 1178, 1180 (Colo.App. 1984) (exercising appellate jurisdiction in a case in which the district court had certified under C.R.C.P. 54(b) a default judgment quieting title in a particular property, notwithstanding pending slander of title and defamation claims); *cf. Richmond Am.*

*Homes,* 187 P.3d at 1203–04 (concluding, in a case in which a contractor sought indemnification from several subcontractors for repairs made on 3,000 homes, that the contractor was, in effect, seeking indemnity for each home as a separable claim and that C.R.C.P. 54(b) certification was thus proper).

¶ 24 In contrast, in *Keith v. Kinney,* 961 P.2d 516, 519 (Colo.App.1997), the division held that an order entered during a quiet title action did not dispose of an entire claim for purposes of C.R.C.P. 54(b). In *Keith,* however, the order did not address the interests of all of the parties in the properties at issue. *Id.* The division thus opined that "a limited resolution of those interests is not susceptible to certification under C.R.C.P. 54(b)." *Id.*

¶ 25 Here, as in the scenario addressed in *Corporon* and unlike the circumstances in *Keith,* the sale orders disposed of *all* of the subsidiaries' interests in certain assets, not just a portion of those interests. Moreover, the operative facts giving rise to the sale orders, namely, that the subsidiaries were deadlocked, insolvent, and unable to continue operations, were distinct from the facts underlying the other claims and counterclaims in the case, and the facts underlying the sale orders supported separately enforceable rights. Thus, the Bank and the intervenors could have brought independent claims to dissolve the subsidiaries. *See* § 7–80–810(2)(3), C.R.S.2013 (concerning judicial dissolutions of limited liability companies by members or creditors); *see also Richmond Am. Homes,* 187 P.3d at 1203 (defining a "claim" for purposes of C.R.C.P. 54(b)). Finally, the sale orders did not bar judgment on any other claim, nor would judgment on the other claims have barred a judgment on the sale orders. *See Richmond Am. Homes,* 187 P.3d at 1203.

¶ 26 Accordingly, we conclude that the sale orders here disposed of an "entire claim for relief" for purposes of C.R.C.P. 54(b) certification.

¶ 27 We are not persuaded otherwise by defendants' contention that the claim to which the sale orders pertained was the Bank's claim for the institution of a receiver-

ship and that this claim was not resolved until the receiver was discharged.

■ ¶ 28 Even were we to assume without deciding that the appointment of a receiver could qualify as the disposition of a "claim" for purposes of C.R.C.P. 54(b), notwithstanding the fact that such an appointment is immediately appealable absent certification, *see* C.A.R. 1(a)(4), C.R.C.P. 66 contemplates that the appointment of a receiver may exist alongside other claims in an action. Specifically, although C.R.C.P. 66(d)(1) provides that the appointment of a receiver "may be the sole claim for relief in an action," C.R.C.P. 66(a) states that a receiver may be appointed "[b]efore judgment," "[b]y or after judgment," or "[i]n other cases where proper and in accordance with the established principles of equity."

¶ 29 Moreover, cases interpreting Fed. R.Civ.P. 54(b), which is substantively identical to C.R.C.P. 54(b), show that orders entered in the course of a receivership proceeding can be certified independently of the order appointing the receiver. *See, e.g., S.E.C. v. Capital Consultants LLC,* 453 F.3d 1166, 1174 (9th Cir.2006) (concluding that a Fed.R.Civ.P. 54(b) certification entered during the course of a receivership proceeding was proper because the orders that were certified addressed the merits of the litigation and finally resolved all of the claims of some of the parties); *Liberte Capital Grp. v. Capwill,* 321 F.Supp.2d 899, 901 (N.D.Ohio 2004) (certifying an order regarding the disbursement of certain funds from a receivership because the operative facts giving rise to the disbursement were distinct from those underlying the other claims in the case and the method of disbursement implicated distinct legal rights); *see also Harding Glass,* 640 P.2d at 1125 n. 3 (noting that because C.R.C.P. 54(b) is virtually identical to Fed. R.Civ.P. 54(b), case law interpreting the federal rule is persuasive in the analysis of the Colorado rule). *But cf. State St. Bank & Trust Co. v. Brockrim, Inc.,* 87 F.3d 1487, 1490 (1st Cir.1996) (concluding that the district court erred in certifying a contingent asset sale order entered during a receivership proceeding where, before the sale became binding, the court was required to hold

a hearing and resolve potentially difficult and disputed issues, including tax matters, receivership costs, and the amount that would be realized from a prior asset sale).

### C. "No Just Reason for Delay"

¶ 30 Defendants next argue that the district court abused its discretion in concluding that there was no just reason for delay in entering a final judgment concerning the sale orders. They claim that the fact that they were unrepresented when the intervenors filed their certification motion provided a just reason. Because defendants did not make this argument in the district court, however, we will not consider it. *See Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.*, 2012 CO 61, ¶ 18, 287 P.3d 842, 847 ("It is axiomatic that issues not raised in or decided by a lower court will not be addressed for the first time on appeal.").

### D. Untimeliness of the Appeal

¶ 31 In light of the foregoing, we conclude that the district court properly certified the sale orders under C.R.C.P. 54(b). The question thus becomes whether defendants timely appealed from those orders. We conclude that they did not.

¶ 32 When a judgment is properly certified for appeal under C.R.C.P. 54(b), the time for appeal of that judgment begins to run from the date of the C.R.C.P. 54(b) certification. *See Grear v. Mulvihill*, 207 P.3d 918, 921 (Colo.App.2009); *cf. Keith*, 961 P.2d at 519–20 (rejecting the plaintiffs' argument that the defendant's appellate challenge to a C.R.C.P. 54(b) certification, which challenge was filed over one year after the certification, was untimely, because the certification was improper and therefore, the time to appeal had never begun to run).

¶ 33 Here, the district court properly certified the sale orders on December 13, 2010. At the time of that certification, C.A.R. 4(a) required that a notice of appeal be filed within forty-five days of the entry of judgment. Accordingly, defendants had until January 27, 2011 to file their notice of appeal from the certified orders. They did not file such a notice, however, until August 16, 2012, more than a year after the forty-five day period had expired. Thus, their notice was untimely with respect to the C.R.C.P. 54(b) certification, and we therefore lack jurisdiction over the portion of this appeal concerning the sale orders. *See In re Marriage of Buck*, 60 P.3d 788, 789 (Colo.App.2002) ("The timely filing of a notice of appeal is a jurisdictional prerequisite to appellate review.").

¶ 34 For these reasons, the portion of this appeal concerning the sale orders is dismissed.

### III. Summary Judgment

¶ 35 Defendants next contend that the district court erred in granting summary judgment to the intervenors on defendants' counterclaims for abuse of process and civil conspiracy. We are not persuaded.

### A. Standard of Review

¶ 36 We review de novo an order granting a motion for summary judgment. *Vail/Arrowhead, Inc. v. Dist. Court*, 954 P.2d 608, 611 (Colo.1998). Summary judgment is proper only when the pleadings and supporting documents show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Jenkins v. Panama Canal Ry. Co.*, 208 P.3d 238, 240 (Colo.2009). In determining whether summary judgment is proper, a court grants the nonmoving party any favorable inferences reasonably drawn from the facts and resolves all doubts in favor of the nonmoving party. *Jenkins*, 208 P.3d at 241. In responding to a properly supported summary judgment motion, however, the nonmoving party "may not rest upon mere allegations or denials in its pleadings, but must provide specific facts demonstrating the existence of a genuine issue for trial." *Sender v. Powell*, 902 P.2d 947, 950 (Colo.App.1995); *accord* C.R.C.P. 56(e).

### B. Abuse of Process

¶ 37 "In Colorado, abuse of process requires proof of (1) an ulterior purpose in the use of judicial proceedings; (2) willful actions by a defendant in the use of process that are not proper in the regular conduct of

a proceeding; and (3) damages." *Hewitt v. Rice*, 154 P.3d 408, 414 (Colo.2007).

The essential element of an abuse of process claim is the use of a legal proceeding in an improper manner; therefore, an improper *use* of the process must be established. "If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint there is no abuse, even if the plaintiff had an ulterior motive in bringing the action or if he knowingly brought suit upon an unfounded claim."

*Sterenbuch v. Goss*, 266 P.3d 428, 439 (Colo. App.2011) (quoting *James H. Moore & Assocs. Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 373 (Colo.App.1994)); *see also Mintz v. Accident & Injury Med. Specialists, PC*, 284 P.3d 62, 66 (Colo.App.2010) (noting that there is no liability for abuse of process if the defendant's ulterior purpose was simply incidental to the proceeding's proper purpose), *aff'd*, 279 P.3d 658 (Colo.2012).

¶ 38 Moreover, although an ulterior motive may be inferred from the wrongful use of process, the wrongful use may not be inferred from the motive. *Inst. for Prof'l Dev. v. Regis College*, 536 F.Supp. 632, 635 (D.Colo.1982); *Mintz*, 284 P.3d at 67.

¶ 39 Here, defendants assert that the evidence in the summary judgment record allowed an inference that the intervenors' primary, if not sole, intent was to divest defendants of their ownership interests in the three golf courses. Even if true, however, this evidence would establish only that the intervenors had an ulterior motive in bringing the action. It would not establish the requisite improper use of process. *See Sterenbuch*, 266 P.3d at 439.

¶ 40 Further, the undisputed evidence established that the action was confined to its regular and legitimate function in relation to the cause of action stated in the complaint. Specifically, the intervenors sought the appointment of a receiver so that the subsidiaries and their assets, in which the intervenors had an interest, would not be subject to further waste and devaluation, as they alleg-

edly would have been had they remained in defendants' possession.

¶ 41 Accordingly, notwithstanding defendants' assertions to the contrary, the intervenors had a strong and legitimate interest in removing defendants from the ownership and management of the subsidiaries, and a receivership proceeding was a proper vehicle to pursue this objective. *See, e.g.,* C.R.C.P. 66(a)(1) (providing that a receiver may properly be appointed when, among other things, property that is the subject of an action and that is in the possession of an adverse party is in danger of being lost or materially injured or impaired).

¶ 42 For these reasons, we agree with the district court that defendants failed as a matter of law to establish an abuse of process claim against the intervenors.

## C. Civil Conspiracy

¶ 43 "Civil conspiracy is a derivative cause of action that is not independently actionable." *Bd. of Cnty. Commis v. Park Cnty. Sportsmen's Ranch, LLP*, 271 P.3d 562, 572 (Colo.App.2011). "[I]f the acts alleged to constitute the underlying wrong provide no cause of action, then no cause of action arises for the conspiracy alone." *Id.*

¶ 44 Here, defendants' conspiracy claims were based on the alleged underlying wrong of abuse of process. Because we have concluded that defendants failed to provide sufficient evidence to support their abuse of process counterclaim, we further conclude that the district court properly granted summary judgment on their civil conspiracy counterclaim.

## IV. Conclusion

¶ 45 For these reasons, the appeal of the sale orders is dismissed, and the judgment is affirmed in all other respects.

JUDGE FURMAN and JUDGE PLANK * concur.