2015 COA 20

**RANCH O, LLC, Plaintiff–Appellant,**

v.

**COLORADO CATTLEMEN'S AGRI-CULTURAL LAND TRUST, De-fendant–Appellee.**

**Court of Appeals No. 13CA2204**

Colorado Court of Appeals,
Div. I.

Announced February 26, 2015

---

§ 24–51–1105, C.R.S. 2014.

Berg Hill Greenleaf & Ruscitti LLP, David G. Hill, Josh A. Marks, Heidi C. Potter, Boulder, Colorado, for Plaintiff–Appellant.

Heizer Paul LLP, Edward T. Ramey, Eric R. Jaworski, Denver, Colorado, for Defendant–Appellee.

Opinion by JUDGE GABRIEL

¶ 1 In this action concerning the validity of a deed of conservation easement, plaintiff, Ranch O, LLC, appeals the grant of summary judgment to defendant, Colorado Cattlemen's Agricultural Land Trust (the Land Trust). We conclude that (1) the district court correctly reformed the deed based on a mutual mistake as to the grantor of the conservation easement and (2) reforming the deed did not violate the public policies and purposes behind Colorado's race-notice statute. Accordingly, we affirm.

## I. Background

¶ 2 Craig J. Walker was the sole manager and ninety-nine percent membership owner of Walker I–Granby, LLC (LLC). Walker owned certain property (the subject property) that he conveyed to the LLC.

¶ 3 Thereafter, Walker and the Land Trust signed a deed of conservation easement (the Conservation Deed), which purported to grant the Land Trust a conservation easement on the subject property. The Land Trust subsequently recorded this Conservation Deed.

¶ 4 Notably, the Conservation Deed named Walker as the easement's grantor. As noted above, however, Walker had previously conveyed the subject property to his LLC. Thus, the LLC, rather than Walker, should have been the grantor of the Conservation Deed. Walker was not aware of this error, and the Land Trust was not aware that the subject property was owned by the LLC and not Walker.

¶ 5 Thereafter, Walker, on the LLC's behalf, entered into discussions with Ranch O's principal about the possibility of selling the subject property to Ranch O. During these discussions, Walker informed Ranch O's principal of the Land Trust's conservation easement.

¶ 6 Ranch O subsequently bought the property from the LLC. Notably, the deed conveying the property to Ranch O provided, in bold type and all block capital letters:

**THE SUBJECT PROPERTY IS ENCUMBERED BY THAT CERTAIN DEED OF CONSERVATION EASE-**

MENT FOR THE WALKER–GRANBY RANCH HELD BY THE COLORADO CATTLEMEN'S AGRICULTURAL LAND TRUST RECORDED ON DECEMBER 31, 1998 AT RECEPTION NUMBER 98013967 IN THE LAND RECORDS OF GRAND COUNTY, COLORADO.

This deed's legal description of the subject property matched the legal description of the subject property set forth in the Conservation Deed.

¶ 7 After purchasing the property, Ranch O initiated these proceedings, seeking, as pertinent here, a declaratory judgment that the Conservation Deed was invalid and had no force and effect. Ranch O asserted that the Conservation Deed was invalid because (1) Walker had no ownership interest in the subject property at the time the Conservation Deed was signed and recorded and (2) a conservation easement could only be created by the record owner of the property to be burdened. Walker and the Land Trust were unaware of the problem with the Conservation Deed until Ranch O brought it to their attention, just before filing suit.

¶ 8 The Land Trust then filed its answer and counterclaims. The counterclaims added Walker and the LLC as additional defendants and sought, among other things, (1) a declaratory judgment that the terms of the Conservation Deed were valid and enforceable, notwithstanding the alleged scrivener's error as to the identification of the grantor; and (2) reformation of the Conservation Deed to correct any errors regarding the identity of the grantor. In support of these claims, the Land Trust argued that the misidentification of the grantor in the Conservation Deed was the result of a mutual mistake between the parties to that instrument.

¶ 9 Walker and the LLC disclaimed any interest in the lawsuit and consented to the relief that the Land Trust requested. Ranch O, however, moved for summary judgment, and the Land Trust then filed a cross-motion for summary judgment.

¶ 10 The district court ultimately denied Ranch O's motion and granted the Land Trust's cross-motion. The court concluded that both Walker and the Land Trust were mistaken that Walker should be named as grantor on the Conservation Deed, and the court ordered reformation of the Conservation Deed to recite the name of the grantor as the LLC. In addition, the court rejected Ranch O's assertion that reformation would be contrary to the policies and purposes of Colorado's race-notice recording statute and concluded that reformation would not prejudice Ranch O because it had notice of the encumbrance and bought the subject property subject to the conservation easement.

¶ 11 Ranch O now appeals.

## II. Standard of Review

¶ 12 We review de novo an order granting a motion for summary judgment. *Colo. Cmty. Bank v. Hoffman*, 2013 COA 146, ¶ 36, 338 P.3d 390, 396. Summary judgment is proper only when the pleadings and supporting documents show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Colo. Cmty. Bank*, 338 P.3d at 396. In determining whether summary judgment is proper, a court grants the nonmoving party any favorable inferences reasonably drawn from the facts and resolves all doubts in favor of the nonmoving party. *Colo. Cmty. Bank*, 338 P.3d at 396. In responding to a properly supported summary judgment motion, however, the nonmoving party may not rest on mere allegations or demands in its pleadings but must provide specific facts demonstrating the existence of a genuine issue for trial. *Id.*; *accord* C.R.C.P. 56(e).

## III. Mutual Mistake

¶ 13 Ranch O first contends that the district court erred in granting summary judgment for the Land Trust because the undisputed facts precluded the district court from reforming the Conservation Deed based on a mutual mistake of fact. We are not persuaded.

¶ 14 At the outset, we note that in *Oken v. Hammer*, 791 P.2d 9, 11 (Colo.App.1990), the division stated:

¶ 15 The general rule is that if a conveyance or encumbrance document fails to reflect that the conveyor is functioning in a fiduciary or representative capacity, and that person does not have a personal or independent interest in the subject property, the document is considered as having been executed in the fiduciary or representative capacity.

¶ 16 Although this rule appears to be applicable here, neither party raised the issue in the district court or on appeal, and the district court did not address it. Accordingly, we will not rule on that basis.

■ ¶ 17 We conclude, however, as did the district court, that the parties to the Conservation Deed made a mutual mistake of fact and that reformation was therefore the appropriate remedy.

¶ 18 Our supreme court has stated:

> Reformation of a written instrument is appropriate only when the instrument does not represent the true agreement of the parties and the purpose of reformation is to give effect to the parties' actual intentions. The evidence must clearly and unequivocally show that reformation is appropriate under the circumstances. A mistake caused by a scrivener's error so that a written agreement does not correctly state the parties' actual intentions and expectations may be remedied by reformation. However, a mutual mistake requires that both parties must "labor under the same erroneous conception in respect to the terms and conditions of the instrument."

*Md. Cas. Co. v. Buckeye Gas Prods. Co.*, 797 P.2d 11, 13 (Colo. 1990) (quoting *Smith v. Anderson*, 121 Colo. 175, 181, 214 P.2d 366, 370 (1950); citations omitted).

¶ 19 Here, the evidence clearly and unequivocally showed that reformation was appropriate because both parties to the Conservation Deed mistakenly believed that it correctly identified the grantor and that the grantor had the authority to convey the conservation easement. Moreover, it was undisputed that both parties intended that the Conservation Deed be signed by the owner, so that the Deed would effectively convey the easement.

¶ 20 In these circumstances, we agree with the district court that the Conservation Deed did not represent the true agreement of the parties and that the parties' mutual mistake justified reforming the Conservation Deed to reflect that the actual owner of the property, namely, the LLC, was the grantor of the conservation easement. *See Robert W. Thomas & Anne McDonald Thomas Revocable Trust v. Inland Pac. Colo., LLC*, No. 11–cv–03333–WYD–KLM, 2012 WL 4443309, at *14 (D.Colo. Sept. 25, 2012) (reforming a deed of trust that mistakenly identified the subject property's prior owner, rather than its current owner, as the grantor, where the parties clearly intended that the deed of trust be signed by the owner of the property so that the deed of trust would secure the defendant's obligations under a note); *Yates v. Hill*, 761 A.2d 677, 680 (R.I. 2000) (holding that the trial court properly reformed a real estate contract signed by a trust's sole trustee in her individual capacity, where the property was actually owned by the trust and both parties to the contract mistakenly entered into the agreement based on their belief that the trustee individually owned the property).

¶ 21 We are not persuaded otherwise by Ranch O's arguments to the contrary.

■ ¶ 22 First, Ranch O argues that because the Land Trust was ignorant of the LLC's existence when it entered into the Conservation Deed, there could have been no mutual mistake. The doctrine of mutual mistake "applies only where both parties are mistaken as to the same basic assumption. Their mistakes need not be, and often they will not be, identical." Restatement (Second) of Contracts § 152 cmt. h (1981). Accordingly, as occurred here, parties can be mutually mistaken regarding a contracting party's identity even when their mistakes on that issue are not identical. *See Gooslin v. B–Affordable Tree Serv.*, 2011-Ohio-4048, ¶¶ 16–18, 2011 WL 3568375 (Ohio Ct.App.2011) (concluding that the reformation of an insurance contract was proper when the parties to that contract were mutually mistaken as to the insured's identity, even though the in-

sured's principals knew the correct name of the insured business and the insurer did not, because the parties intended that the insurer would insure the business owned by the principals).

¶ 23 Second, *Segelke v. Kilmer,* 145 Colo. 538, 360 P.2d 423 (1961), on which Ranch O relies, is distinguishable. In *Segelke,* the plaintiff conveyed real property to the defendants, subject to an oil and gas lease that gave the defendants the right to receive certain royalties pursuant to a so-called "entirety clause." *Id.* at 540–41, 360 P.2d at 425. Neither the plaintiff nor the defendants, however, knew of this entirety clause. *Id.* at 542, 360 P.2d at 426. Thereafter, the plaintiff sought to reform the deeds that she and the defendants had signed, asserting that the parties had mutually intended to negate the entirety clause but did not do so due to a mutual mistake. *Id.* at 541, 360 P.2d at 425–26. The supreme court rejected this argument, holding that reformation was not appropriate because no evidence showed a meeting of the minds as to what the parties would have done had they known of the entirety clause. *Id.* at 544–45, 360 P.2d at 427. The court thus stated, "To order reformation under these circumstances is to re-write, not to reform, the instruments." *Id.* at 545, 360 P.2d at 427.

¶ 24 Here, in contrast, Walker and the Land Trust clearly and unequivocally intended that the grantor of the conservation easement be the owner of the subject property. Accordingly, reformation did not insert a new term that was never in the parties' minds, nor did it rewrite the parties' agreement. Rather, the reformed Conservation Deed represented the true agreement of the parties and gave effect to their actual intentions. *See Md. Cas. Co.,* 797 P.2d at 13.

■ ¶ 25 Third, notwithstanding Ranch O's assertion to the contrary, section 38–30.5–104(1), C.R.S. 2014, did not preclude reformation in this case. Section 38–30.5–104(1) provides, in pertinent part, that a conservation easement "may only be created by the record owners of the surface of the land and, if applicable, owners of the water or water rights beneficially used thereon...." Ranch O contends that this provision re-

quired the Land Trust to confirm the property's ownership prior to the conveyance and that its failure to do so precluded reformation based on mutual mistake. We, however, have seen no applicable authority supporting this assertion. To the contrary, as our supreme court stated long ago, " 'The negligent failure of a party to know or to discover the facts, as to which both parties are under a mistake does not preclude rescission or reformation on account thereof.' " *Carpenter v. Hill,* 131 Colo. 553, 557, 283 P.2d 963, 965 (1955) (quoting Restatement (First) of Contracts § 508 (1932)); *see also* Restatement (Second) of Contracts § 157 (1981) ("A mistaken party's fault in failing to know or discover the facts before making the contract does not bar him from avoidance or reformation under the rules stated in this Chapter, unless his fault amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing.").

¶ 26 Moreover, we agree with the district court that it would be illogical to conclude that Walker and the Land Trust intended to execute an invalid Conservation Deed at the time they signed it. Thus, reformation accomplishes the purpose of section 38–30.5104(1) and effectuates the intent of the parties to the Conservation Deed.

■ ¶ 27 Finally, Ranch O argues that there was at least a genuine issue of material fact as to whether Walker was acting as the LLC's agent when he signed the Conservation Easement, thereby precluding summary judgment for the Land Trust. Ranch O, however, did not make this argument in the district court. Rather, it (1) admitted that at all pertinent times, Walker was the sole manager and ninety-nine percent membership owner of the LLC; (2) did not respond to the Land Trust's assertions that Walker was the principal of the record owner at the time the Conservation Deed was signed and that "to the best of [the Land Trust's] knowledge and belief, [Walker] was at all pertinent times acting on behalf of the record owner"; and (3) offered no evidence contrary to the Land Trust's foregoing assertions. Accordingly, Ranch O is precluded from now asserting a factual dispute on this point. *See Luttgen v. Fischer,* 107 P.3d 1152, 1155 (Colo. App.

2005) ("On review of a summary judgment ruling, we do not consider arguments and evidence that were not presented to the trial court.").

¶ 28 For these reasons, we conclude that the district court properly reformed the Conservation Deed based on the mutual mistake by Walker and the Land Trust as to the proper grantor of that Deed.

## IV.   Race–Notice Statute

¶ 29 Ranch O next contends that the reformation of the Conservation Deed violated the policies and purposes behind Colorado's race-notice statute.   We disagree.

¶ 30 Colorado's recording statute, section 38–35–109, C.R.S. 2014, is a so-called "race-notice" statute.   *Nile Valley Fed. Sav. & Loan Ass'n v. Sec. Title Guar. Corp.*, 813 P.2d 849, 851 (Colo. App. 1991).   Its purpose is to protect purchasers of real property against the risk of prior secret conveyances by the seller and to allow a purchaser to rely on the title as it appears of record.   *Id.* Accordingly, unrecorded instruments or documents are generally not valid against persons with rights in or to such real property who first record and those holding rights under such persons. § 38–35–109(1).   The statute makes an exception, however, for the parties to such unrecorded documents and those having notice thereof prior to their acquisition of rights in the property.   *See id.* Thus, unrecorded instruments are valid against a party who holds rights in or to real property if that party had notice of the unrecorded instrument prior to the acquisition of such rights.   *See id.*

¶ 31 Here, it is undisputed that even if the Conservation Deed was a so-called "wild deed" (i.e., a deed in which the grantor was a stranger to title, thus placing the deed outside the chain of title), Ranch O had actual notice of that Conservation Deed before it purchased the subject property.   Moreover, as noted above, the LLC's deed to Ranch O advised Ranch O, in bold type and all block capital letters, that the subject property was encumbered by a deed of conservation easement for the Walker–Granby Ranch held by the Land Trust, and the LLC's deed to Ranch O gave the Conservation Deed's recording date and reception number.

¶ 32 Accordingly, pursuant to section 38–35–109(1), the Conservation Deed was valid against Ranch O, and thus, reformation of that Deed was not contrary to the purposes and policies of Colorado's race-notice statute.

¶ 33 We are not persuaded otherwise by Ranch O's contention that it was entitled to ignore the Conservation Deed, notwithstanding its actual knowledge of that Deed, because (1) the Deed was outside the chain of title and (2) Ranch O was a bona fide purchaser.

¶ 34 In certain circumstances, a bona fide purchaser of real property can defeat a claim for reformation.   *See, e.g.,* Restatement (Second) of Contracts § 155 cmt. f (1981) ("The claim of a mistaken party to reformation, being equitable in its origin, is subject to the rights of good faith purchasers for value and other third parties who have similarly relied on the finality of a consensual transaction in which they have acquired an interest in property.").

¶ 35 When, however, a purchaser obtained his or her interest with actual knowledge that an instrument created or was intended to create an encumbrance on the property, even if the instrument was defective, as Ranch O did here, the purchaser cannot ignore the instrument and then seek to defeat its reformation.   *See Atchison v. City of Englewood,* 193 Colo. 367, 377–78, 568 P.2d 13, 21 (1977) (rejecting the claim of a third party that it was a bona fide purchaser for value that could ignore an encumbrance that was recorded and later declared void, where the third party had actual notice of the encumbrance prior to purchasing the property at issue and knew that the parties to that encumbrance had either created or attempted to create the encumbrance, even if the encumbrance was partially defective prior to its reformation), *superseded by statute as stated in Brush Grocery Kart, Inc. v. Sure Fine Mkt., Inc.,* 47 P.3d 680 (Colo. 2002); *see also Rocky Mountain Fuel Co. v. Clayton Coal Co.,* 110 Colo. 334, 340, 134 P.2d 1062, 1066 (1943) (noting that the parties to a lease agreement that referenced an unrecorded

purchase and sale contract were bound by the reference to the contract but that the reference did not bind third parties, who were not required to make inquiry or investigate concerning such a recitation or reference); *cf. Bd. of Comm'rs v. Timroth*, 87 P.3d 102, 109 (Colo. 2004) (noting that reformation of an instrument will generally relate back to the original date of execution of the instrument, except when reformation would injure bona fide purchasers who obtained their interest without notice). To hold otherwise would run counter to the notion that reformation is an equitable remedy that should be available when fairness demands such relief. *See Robert W. Thomas & Anne McDonald Thomas Revocable Trust*, 2012 WL 4443309, at \*14. Conversely, reforming the Conservation Deed here effectuates the intent of the parties to that instrument and does not prejudice Ranch O in any way, given Ranch O's actual knowledge of the Conservation Deed. We thus agree with the district court that this is the result that equity demands.

¶ 36 Accordingly, in the circumstances presented here, we conclude that Ranch O was not entitled to ignore the Conservation Deed of which it had actual notice.

### V. Appellate Attorney Fees

¶ 37 Pursuant to section 38–35–109(3) and C.A.R. 39.5, Ranch O requests its appellate attorney fees on the ground that the Land Trust willfully refused to release an invalid deed. Because we have concluded that the Conservation Deed is valid, we deny Ranch O's fee request.

### VI. Conclusion

¶ 38 For these reasons, the judgment is affirmed.

JUDGE TAUBMAN and JUDGE BOORAS concur.